ST. JOHN'S EVANGELICAL LUTHERAN CHURCH *et al.*, Plaintiffs-Appellees, *v.* VIOLET W. KREIDER *et al.*, Defendants-Appellants.

Fourth District   No. 14254

Opinion filed November 4, 1977.

Charles J. Gramlich and Michael B. Metnick, both of Springfield, for appellants.

Craig A. Randle and James R. Potter, both of Londrigan and Potter, P. C., of Springfield, for appellees.

Mr. JUSTICE TRAPP delivered the opinion of the court:

Defendants appeal from the order of the trial court which permanently enjoins them from use of Lot 24 of a subdivision "[i]n violation of restrictive covenants" and for "traffic purposes."

Defendants proposed to build a church for a congregation of some 130 persons. The total area of Lot 24 approximates 32,000 square feet. The church will occupy 3,200 square feet, approximately 20,000 would be paved as streets and parking area. Open space would approximate 8,800 square feet. The subdivision as platted in 1916, was outside of the city limits. No zoning provisions are at issue. Deeds from the grantors contained as relevant covenants:

> "1. That no building or any other structure which may be erected upon any portion of said premises shall be used for business, trade, traffic, or manufacturing purposes, nor shall spirituous, vinous or malt liquors be sold on said premises.
>
> 2. That no more than one dwelling shall be erected upon said lot nor at a cost of less than $10,000 for such dwelling."

The letter memorandum of the trial judge states that he has:

> "* * * found it necessary to give particular significance to the words 'traffic' and 'any other structure' set forth in the first covenant."

Subsequently, the court finds specifically:

"\* \* \* that it would be contrary to the restrictive covenants relative to Washington Park Gardens Subdivision and inequitable to permit the defendants to construct a building and other structures such as pavement and blacktopped structure for traffic \* \* \*."

In support of such conclusion, the court stated:

"Consideration has been given the usual interpretations of the word 'traffic'. In the American Heritage Dictionary a definition of traffic which seems applicable hereto is as follows:

'The passage of persons, vehicles \* \* \* through routes of transportation \* \* \*.' "

He also refers to the secondary meaning in Webster's New World Dictionary as the movement of vehicles and persons along a street.

■█ The meaning of the word "traffic" plainly should be construed in terms of its usage at the time of the drafting of the covenant in 1916. Cyclopedia of Law & Procedure (1911), defines "traffic" as trade, commerce, exchange or sale of commodities. No reference is made to the passage of vehicles or pedestrians in its present denotation. Black's Law Dictionary (3d ed. 1944) gives the primary meaning of the word as commerce or trade in goods or commodities.

In the secondary sense, the word "traffic" was used in the context of "street traffic," or the passage of persons along public streets (*Stewart v. Hugh Nawn Contracting Co.* (1916), 223 Mass. 525, 112 N.E. 218), or the use of a public highway (63 C. J. 762 (1933)). The record does not show any proposed use as a public way or street.

In the statement of uses restricted by covenant, the word "traffic" in the denotation "[t]he passage of persons, vehicles \* \* \* through the routes of transportation \* \* \*" is an anachronism amongst the other uses of business, trade, manufacturing or the sale of spirits.

Black's Law Dictionary (3d ed. 1944) states the doctrine of *ejusdem generis*:

"In the construction of laws, wills, and other instruments, the 'ejusdem generis rule' is, that where general words follow an enumeration of persons or things, by words of a particular and specific meaning, such general words are not to be construed in their widest extent, but are to be held as applying only to persons or things of the same general kind or class as those specifically mentioned."

■█ While the doctrine is more commonly applied in the construction of statutes, the reason for the doctrine is equally applicable here.

As to the time of the drafting of the covenant in 1916, the original meaning of the word "traffic" as commerce or the sale and exchange of

commodities was consistent with the nature and context of the other specific restrictive words used, *i.e.*, business, trade or manufacturing. As such it would fit within the doctrine of *ejusdem generis* and create a class of things of like kind and purpose.

■■ The word "traffic" as defined for purposes of the injunction is of a different quality and nature and not clearly associated with the use of a single lot as creating a public route of transportation.

■■ In *Gatton v. Page* (1976), 44 Ill. App. 3d 559, 562, 358 N.E.2d 685, 687, the court said:

> "The courts of Illinois have long adhered to the policy that agreements which place restrictions on the power of alienation of property will be strictly construed so that such restrictions will not be extended beyond what is expressly stipulated and ' " * * * all doubts should, as a general rule, be resolved in favor of a free use of property and against restrictions." ' "

In *Staley v. Mears* (1957), 13 Ill. App. 2d 451, 456, 142 N.E.2d 835, 837, the court said:

> "[O]ur courts have held that restrictive covenants should be construed strictly against the subdivider and liberally in favor of the builder or owner. Where there is any doubt, the matter must be resolved in favor of natural rights and against restrictions."

■■ Plaintiffs also argue that the second provision of the restrictive covenant limiting the construction upon a lot to "no more than one dwelling" demonstrates the purpose and intent to limit use to only residential. The preceding provision, however, refers to "building or any other structure" and prohibits business and commercial use. If, in fact, the covenant in its entirety intended that only use as a "dwelling" was permitted such preceding provision was, and is, contradictory and meaningless. Applying the stated rule of strict construction to this covenant, plaintiffs' argument is not persuasive.

■■ The determination of the meaning of the covenant is a question of law. We conclude that the trial court erred in finding the issues for the plaintiffs and in entering the decree for injunction. The decree is reversed.

Reversed.

GREEN, P. J., and MILLS, J., concur.