BRINK'S, INCORPORATED, Plaintiff-Appellee, *v.* ILLINOIS COMMERCE COMMISSION, Defendant-Appellant.

Fourth District   No. 4—82—0033

Opinion filed August 3, 1982.—Rehearing denied September 7, 1982.

Tyrone C. Fahner, Attorney General, of Springfield (Hercules F. Bolos, Special Assistant Attorney General, and Edward P. O'Brien, Assistant Attorney General, of counsel), for appellant.

Thomas G. Lyons, J. Michael Heaton, and Patrick L. Moore, all of O'Keefe, Ashenden, Lyons & Ward, of Chicago, for appellee.

JUSTICE MILLS delivered the opinion of the court:

Does this motor carrier certificate authorize the carrying of armored car commodities?

The ICC said yes.

The circuit court said no.

We agree with the court—the certificate is not that broad.

We affirm.

The Illinois Commerce Commission appeals from the judgment of the circuit court reversing the Commission's order authorizing Douglas Transit, Inc. (Douglas), to carry armored car commodities.

In 1951, the Division of Motor Carriers of the Department of Public Works and Buildings—acting pursuant to the provisions of the Illinois Truck Act (Ill. Rev. Stat. 1941, ch. 95½, par. 240 *et seq.*)—issued two certificates of public convenience and necessity to Douglas' predecessor in interest, Robert Armstrong. One certificate authorized Armstrong as a local carrier and the other authorized Armstrong as a specialized carrier. The certificates limited service to the following commodities and territories:

Local

"[L]ivestock, farm products, feed, coal, merchandise, furniture and commodities general within a 50 mile radius of the post office of Newman, Illinois and to transport such property to or from any point outside of such authorized area of operation for a shipper or shippers within such area."

Specialized

"[L]ivestock, farm products, feed, coal, merchandise, furniture and commodities general to or from any point or points within the State of Illinois."

Thereafter, the Illinois Motor Carrier of Property Act (Ill. Rev. Stat. 1953, ch. 95½, par. 282 *et seq.*) superseded the Illinois Truck

Act. In 1955, the Illinois Commerce Commission issued Armstrong a new certificate of public convenience and necessity. This certificate was obtained pursuant to section 9 of the Illinois Motor Carrier of Property Act (Ill. Rev. Stat. 1953, ch. 95½, par. 282.9). Section 9 was the "grandfather clause" which provided that an applicant holding a certificate under the Illinois Truck Act would be granted a new certificate authorizing the applicant to perform the services authorized and actually performed pursuant to the provisions of the Illinois Truck Act. Armstrong's grandfather certificate provided for the transportation of the following commodities within the stated territory:

"Livestock, farm products, feed, coal, merchandise, furniture and commodities general within a Fifty (50) mile radius of the Post Office at Newman, Illinois, and to transport such property to or from any point outside of such authorized area of operation for a shipper or shippers within such area; also, livestock, farm products, feed, coal, merchandise, furniture and commodities general to or from any point or points within the State of Illinois."

This certificate was subsequently transferred to Douglas. In July 1978, Douglas began issuing receipt forms bearing the inscription "Douglas Transit, Inc., Armored Car Division" to several Springfield banks. At the same time, it began submitting proposals to various Springfield area banks for transporting monies, notes, securities, and other valuable properties usually transported in armored vehicles. Shortly thereafter, Brink's, Inc., and Purolator Security, Inc., filed separate complaints (which were later consolidated) with the Illinois Commerce Commission against Douglas. The Commission granted Douglas' motion to strike certain paragraphs in the Brink's complaint which alleged that Douglas lacked the authority to transport armored car commodities.

On an appeal by Brink's, the circuit court reversed the order of the Commission. However, this court reversed the decision of the circuit court finding that the Commission's order was not final and hence not appealable. The case was remanded back to the Commission. *Brink's, Inc. v. Illinois Commerce Com.* (1980), 85 Ill. App. 3d 1201 (order under Supreme Court Rule 23).

Thereafter, Brink's filed an amended complaint which alleged that Douglas had violated the grandfather clause of the Motor Carriers of Property Law and also had abandoned any authority to carry armored car commodities. Counsel for all parties agreed to a stipulation of facts. Among the facts stipulated were:

"That at no time prior to July 7, 1978, with the exception of

a one-time solicitation in Champaign, Illinois in 1975, has Douglas Transit, Inc. ever solicited to carry currency, coin, jewelry, precious metals, stocks, bonds, checks and other negotiable and non-negotiable instruments, securities, postage and revenue stamps and other valuable documents, papers and properties of unusual and intrinsic value which are commonly carried in armored vehicles [hereinafter referred to as armored car commodities].

That at no time prior to July 7, 1978 has Douglas Transit, Inc. ever owned, leased, or otherwise had available an armored vehicle, a vault or personnel necessary to transport [armored car commodities]."

The Commission issued an order denying the amended complaint of Brink's and Purolator and found that Douglas possessed authority as a common carrier of general commodities including armored car commodities. On appeal, the circuit court reversed the decision of the Commission.

The court's reversal was based on three independent reasons: (1) that the language of the Illinois Truck Act certificates from which Douglas' certificate was derived could not be read to include authority for armored car commodities under the rule of *ejusdem generis*; (2) that there was no actual transportation of any armored car commodities by Douglas' predecessor operating under the Illinois Truck Act and, therefore, Douglas had no armored car commodities authority by virtue of the grandfather clause of the Illinois Motor Carrier of Property Law (Ill. Rev. Stat. 1981, ch. 95½, par. 18—305); and (3) that there had never been any transport of armored car commodities by Douglas or its predecessor and, therefore, any such authority which might have existed had been abandoned.

We find that this case may be disposed of on the basis that Armstrong's certificate did not authorize the carriage of armored car commodities and express no opinion on the other two reasons in support of the circuit court's judgment.

The Commission's position is that the phrase "commodities general" in Douglas' certificate refers to *all* commodities, so that Douglas is authorized to carry any commodity including armored car commodities. Brink's maintains that the phrase "commodities general" should be interpreted as only authorizing Douglas to transport all commodities in the class of commodities described by the specific words preceding that phrase under the rule of construction known as *ejusdem generis*.

The rule of *ejusdem generis* was explained by the Illinois Supreme

Court in *Bullman v. City of Chicago* (1937), 367 Ill. 217, 226, 10 N.E.2d 961, 965. The court said:

> " 'It has been repeatedly held by this and other courts, that where general words follow particular and specific words in a statute the general words must be construed to include only things of the same kind as those indicated by the particular and specific words; [citations] and this rule is enforced in the construction of a statute unless there is something in the statute, or its context, which shows that the doctrine of *ejusdem generis* should not be applied. [Citations.]' " (Quoting *City of Chicago v. Ross* (1912), 257 Ill. 76, 79, 100 N.E. 159.)

The reason for the rule is that if the legislature had intended that the general words apply without restriction, it would have used only "one compendious word." (*People v. Capuzi* (1960), 20 Ill. 2d 486, 494, 170 N.E.2d 625, 629.) The application of the rule is not limited to statutes but extends to wills and other instruments. (*Capuzi; St. John's Evangelical Lutheran Church v. Kreider* (1977), 54 Ill. App. 3d 257, 369 N.E.2d 370.) The Interstate Commerce Commission has applied the doctrine when interpreting certificates of public convenience and necessity issued to interstate carriers. *Petroleum Carrier Corp. v. Black* (1950), 51 M.C.C. 717.

■■ The rule is not a rule of mandatory application and must yield when a contrary intent is apparent. However, the Illinois Supreme Court has indicated that the rule is applicable unless a contrary intent is evident. (See *Farley v. Marion Power Shovel Co.* (1975), 60 Ill. 2d 432, 328 N.E.2d 318; *Bullman.*) Nothing in the record indicates the rule should not be applied to Douglas' certificate. The Commission offers no reasonable explanation as to why the Department, if it intended Armstrong to carry *all* commodities, did not merely employ the "one compendious" phrase "commodities general" instead of listing several particular commodities as it did.

The words "livestock, farm products, feed, coal, merchandise, furniture" in the certificate would be rendered superfluos if the phrase "commodities general" was interpreted to include all commodities. On the other hand, if the phrase is interpreted as including all commodities within the class of commodities described by the particular words, then all the words in the certificate can be given effect. Furthermore, as Brink's indicates, if Armstrong had authority to carry all commodities, then it had authority to carry such commodities as high explosives, tanks of chlorine, and chemical and radioactive waste products. We find it highly unlikely that, if the Department actually intended Armstrong to carry all commodities, it would have failed to specify

these extraordinary commodities while making special mention of such mundane items as feed and furniture.

Brink's states in its brief that the specific words in Douglas' certificate describes a "rural general freight service suited to bring the produce of the farm to the town and to carry manufactured goods back to the agricultural communities." This classification is consistent with the language in the certificate and with the types of commodities actually transported by Douglas prior to its solicitation of armored car commodities. Armored car commodities are not within the class of commodities described by the specific words in Douglas' certificate and, therefore, are not included by the phrase "commodities general" as that phrase is used in the certificate.

█ Accordingly, we hold that Douglas' certificate does not authorize the carriage of armored car commodities.

The judgment of the circuit court is affirmed.

Affirmed.

GREEN, P. J., and WEBBER, J., concur.