DOUGLAS TRANSIT, INC., *et al.*, Plaintiffs-Appellees, v. THE ILLINOIS COMMERCE COMMISSION, Defendant-Appellant (A&B Freight Lines, Inc., *et al.*, Intervenors).

Fourth District   No. 4—86—0093

Opinion filed July 3, 1986.

Neil F. Hartigan, Attorney General, of Springfield (Hercules F. Bolos and David L. Nixon, Special Assistant Attorneys General, of Chicago, of counsel), for appellant.

Robert T. Lawley, of Routman & Lawley, Ltd., of Springfield, for appellees.

PRESIDING JUSTICE McCULLOUGH delivered the opinion of the court:

The defendant, Illinois Commerce Commission (Commission), appeals a circuit court decision which partially stays the effect of a Commission order which permitted the transfer of motor-carrier-operating authority from plaintiff, Douglas Transit, Inc. (Douglas), to plaintiff, Hunt Super Service, Inc. (Hunt), but on terms not agreeable to Hunt and Douglas. We affirm.

The instant proceedings commenced on May 16, 1983, with the fil-

ing by Douglas and Hunt of an application for the transfer of Douglas' certificate of public convenience and necessity to operate as a motor carrier to Hunt. Shortly after the filing of this request, Hunt commenced operations under the terms of Douglas' certificate, pursuant to temporary authority granted by the Commission which the Commission extended several times.

On October 30, 1985, the Commission granted Douglas' and Hunt's application for transfer of operating authority, but held that various commodities listed in the abstracts of shipments submitted by Douglas and Hunt were "not of a similar nature to those specific commodities" listed in Douglas' certificate of public convenience and necessity and were thus outside the scope of Douglas' common-carrier authority. As the basis for this conclusion, the Commission relied on our opinion in *Brink's, Inc. v. Illinois Commerce Com.* (1982), 108 Ill. App. 3d 186, 439 N.E.2d 1, where, pursuant to the doctrine of *ejusdem generis*, we held that the term "commodities general," appended to a list of specific commodities appearing in Douglas' certificate of public convenience and necessity, is limited to those commodities which are within the class of commodities described by the specific words preceding it. The implication of the Commission's October 30, 1985, order is that Hunt is not entitled, under the operating authority conferred upon it by the transfer of the Douglas certificate, to transport the commodities found by the Commission to be outside the scope of Douglas' operating authority, which commodities apparently comprise a substantial percentage of the articles transported by Hunt pursuant to its temporary authority to operate under the Douglas certificate.

On December 10, 1985, Douglas and Hunt filed with the Commission a petition for rehearing and/or reconsideration of the above order. Following the denial of this petition, Douglas and Hunt filed in the Sangamon County circuit court a notice of appeal from the Commission's October 30, 1985 order. Subsequently, on January 7, 1986, Douglas and Hunt filed a motion for a stay of the October 30, 1985, order, insofar as it deleted from Hunt's new certificate of public convenience and necessity authorization to carry certain commodities which had been included within the scope of Douglas' operating authority. The circuit court granted the say in an order entered January 14, 1986, which it amended on February 4, 1986.

Meanwhile, the last grant of temporary authority permitting Hunt to operate under the full scope of Douglas' certificate had expired on December 19, 1985. On December 24, 1985, the Commission's Motor Carrier Employee Board denied a request by Hunt that its temporary

authority to operate in this manner be extended. The principal basis stated for this decision was that Hunt had had sufficient time subsequent to the October 30, 1985, order in which to file the applicable rates and tariffs, which filing was necessary in order to begin operations under the authority granted to Hunt by the October 30, 1985 order.

We first consider what standard of review is applicable to the stay order from which the Commission appeals. Prior to 1986, a stay of a Commission order could be entered only if the evidence supported a finding that the petitioner would incur "great or irreparable damage" absent a stay. (Ill. Rev. Stat. 1983, ch. 111²/₃, par. 75.) However, the Illinois Commercial Transportation Law, effective January 1, 1986, provides that a court may stay a Commission order "in its discretion." (Ill. Rev. Stat. 1985, ch. 95½, par. 18c-2205(2).) Section 18c— 2206 of the Illinois Commercial Transportation Law further provides that where it is silent, proceedings for judicial review of the Commission decisions are to be governed by the Administrative Review Law (Ill. Rev. Stat. 1985, ch. 95½, par. 18c—2206), which in turn states that administrative agency decisions may be stayed for "good cause shown" (Ill. Rev. Stat. 1985, ch. 110, par. 3—111(1)). In *Moore v. Mankowitz* (1984), 127 Ill. App. 3d 1050, 469 N.E.2d 1133, we held that "good cause" for a stay of an administrative decision (within the meaning of the Administrative Review Law (Ill. Rev. Stat. 1985, ch. 110, par. 3—101 *et seq.*)) exists where a litigant establishes that a stay is required in order to preserve the status quo and raises "at least a fair question as to the likelihood of success on the merits." *Moore v. Mankowitz* (1984), 127 Ill. App. 3d 1050, 1055, 469 N.E.2d 1133, 1137.

■■ ■ The Commission asserts that the "good cause" standard stated in the Administrative Review Law is incorporated by reference into the Illinois Commercial Transportation Law by virtue of paragraph 18c—2206 thereof (Ill. Rev. Stat. 1983, ch. 95½, par. 18c— 2206). Under the view we take of this matter, we need not, however, determine whether this is so. A judicial order issued pursuant to a court's discretionary authority is not subject to reversal on review unless it constitutes an abuse of the court's discretion. (See *Whitney v. Madden* (1948), 400 Ill. 185, 79 N.E.2d 593, *cert. denied* (1948), 335 U.S. 828, 93 L. Ed. 382, 69 S. Ct. 55.) The term "abuse of discretion" has been defined as " 'palpably erroneous, contrary to the manifest weight of the evidence, or manifestly unjust' " (*In re Marriage of Batchelor* (1980), 89 Ill. App. 3d 781, 783, 412 N.E.2d 49, 51), and as a decision with respect to which "no reasonable person would take

the view adopted by the trial court" (*In re Marriage of Chambers* (1984), 125 Ill. App. 3d 507, 508-09, 466 N.E.2d 262, 264). In our view, a decision with respect to which no reasonable person would take the view adopted by the trial court or a decision which is palpably erroneous or contrary to the manifest weight of the evidence is necessarily one which is not based on good cause. It follows that there is for practical purposes no distinction between the "abuse of discretion" standard of review applicable to stay orders which is implicitly prescribed by the Illinois Commercial Transportation Law and the "good cause" standard of review prescribed by the Administrative Review Law, and that judicial definitions of the term "good cause" as used in the Administrative Review Law are relevant to consideration of whether a Commission order was properly stayed pending review.

■ The Commission further asserts that there is not (or at least should not be) any practical distinction between the test applicable to review of stays of administrative decisions which we stated in *Moore* and the criteria which have traditionally been deemed relevant to review of orders granting injunctive relief (possession of clearly ascertainable right requiring protection; occurrence of irreparable harm absent injunction; lack of adequate legal remedies; likelihood of success on the merits (*e.g., Illinois Consolidated Telephone Co. v. Aircall Communications, Inc.* (1981), 101 Ill. App. 3d 767, 428 N.E.2d 747)). However, our decisions in *Moore* and in *People ex rel. Edgar v. Miller* (1982), 110 Ill. App. 3d 264, 441 N.E.2d 1328, make it clear that where relief essentially equitable in nature is sought on the basis of the statutory authority of courts to grant such relief, as opposed to the inherent authority of courts to grant equitable relief, the statutorily prescribed standards of review control. In view of the *Moore* and *Miller* decisions, the Commission's argument, that the traditional common law criteria applicable to review of orders granting equitable relief are relevant to review of orders granting stays of Commission decisions, is utterly untenable.

The Commission asserts that in entering the stay order at issue, the circuit court granted inappropriate relief because (1) Douglas' and Hunt's motion for a stay is facially insufficient in that it does not state the elements necessary to obtain injunctive relief and is not verified; (2) Douglas and Hunt did not present evidence sufficient to establish that they are entitled to a stay; (3) the status quo which a stay would have preserved under the circumstances here present is that of Douglas, as opposed to Hunt, being authorized to operate under Douglas' original certificate; (4) the circuit court has no authority to grant either temporary authority to operate as a motor carrier or mo-

tor-carrier certificates of public convenience and necessity; (5) if the stay is interpreted as suspending the operation of the Commission's October 30, 1985, order, which, *inter alia* requires Hunt to file tariffs before beginning operations under the new certificate provided for therein, Hunt is, in view of the fact that a motor carrier cannot operate until tariffs are filed, placed in the position of having to operate either illegally or not at all during the pendency of the stay; (6) the stay order, inasmuch as it purports to stay the effect of the portion of the October 30, 1985, order which "diminishes and deletes the general commodity authorization" contained in Douglas' certificate, effectively deletes from that order the analysis and findings necessary to support transfer of Douglas' authority to Hunt; and (7) the bond which Hunt filed with respect to the stay order and which the circuit court approved, is inadequate in that it is not secured.

Considering first the sufficiency of Douglas' and Hunt's motion for a stay, there are no Illinois cases dealing with the question of what allegations must be considered in a motion for a stay. As Douglas and Hunt point out, one authority states that the grounds for a motion may generally be omitted therefrom, with certain exceptions not here relevant. (1 C. Nichols, Illinois Civil Practice sec. 404, at 386 (rev. ed. 1984).) However, this statement runs counter to the principle that motions should generally advise opposing parties of the bases for the order sought by the movant. For instance, motions directed to pleadings must point out the specific defects in the pleadings to which they are directed. (Ill. Rev. Stat. 1985, ch. 110, par. 2—615(1); *Segall v. Berkson* (1986), 139 Ill. App. 3d 325, 487 N.E.2d 752.) Moreover, cases from other jurisdictions are apparently unanimous in holding that a request for a stay must allege facts sufficient to support issuance of a stay. The reason for this requirement is that the party seeking a stay has the burden of proving adequate justification therefor. (1A C.J.S. *Actions* sec. 245, at 727 (1985).) There are apparently no cases, however, which hold that a request for a stay must be verified.

■ In considering whether Douglas' and Hunt's motion for a stay alleges facts sufficient to establish that a stay is necessary to preserve the status quo and that there is a fair question as to Douglas' and Hunt's success with respect to the merits of their appeal from the Commission's October 30, 1985, order, we consider that this is a case of first impression in Illinois, and that Douglas and Hunt had no prior notice as to the standard which would be applied in assessing the sufficiency of their motion. Douglas' and Hunt's motion does state that the Commission's October 30, 1985, order wrongfully and arbitrarily deleted commodities from the certificate which it provided was to be

issued to Hunt, but contains no other allegations supporting the view that Douglas and Hunt have a fair chance of success on the merits. The motion does, however, allege that Hunt derived a substantial portion of its revenue from operations pursuant to the authority contained in the Douglas certificate, and that it had been operating within the full scope of that authority pursuant to temporary authority granted on or about June 1, 1983. In our estimation, these allegations together with the previously mentioned statement that the October 30, 1985, order wrongfully and arbitrarily deleted commodities from the Douglas certificate, amount to an adequate basis for concluding that a stay is necessary to preserve the status quo. In view of the uncertain state of the law relative to the required content of motions for stays of ICC decisions when Douglas and Hunt filed their motion for a stay, we cannot say that that motion is facially insufficient to sustain an order granting the relief requested therein.

■ We also feel that at the hearing on their request for a stay, Douglas and Hunt presented sufficient evidence to support issuance of the stay. Douglas' and Hunt's argument, presented at that hearing, that it was error for the Commission on the basis of our decision in *Brink's, Inc. v. Illinois Commerce Com.* (1982), 108 Ill. App. 3d 186, 439 N.E.2d 1, to restrict the scope of Hunt's new operating authority by deleting from the original Douglas certificate and not including in Hunt's new certificate commodities in addition to the armored-car commodities which in *Brink's* we held not to be included within the scope of Douglas' operating authority, raised a fair question as to their likelihood of success on the merits of their appeal of the October 30, 1985, order.

■ With respect to whether Douglas and Hunt established that a stay is necessary in order to preserve the status quo, the term status quo, as used in the context of establishing a basis for equitable relief, has, as the Commission points out, been defined as "the last, actual, peaceable uncontested status which preceded the pending controversy." (*Hydroaire, Inc. v. Sager* (1981), 98 Ill. App. 3d 758, 761, 424 N.E.2d 719, 722.) At the January 14, 1986, hearing on Douglas' and Hunt's motion for a stay, the following exchange occurred during the testimony of Rudy Bauer, Hunt's vice-president of sales:

"Q. All right, sir, and approximately when did you start operating under the Douglas certificate?

A. It would have been about June, summer of 1983.

Q. Have you operated under that authority since that time?

A. Yes, we have."

It is thus apparent that at the time of the hearing on Douglas' and

Hunt's motion for a stay, Hunt was operating within the full scope of Douglas' authority, even though its temporary authority to do so had expired on December 19, 1985. For aught that appears of record, neither the intervenors nor the Commission sought to enjoin Hunt from operating in this manner. Thus, contrary to the Commission's contention, the last, actual, peaceable uncontested status which preceded this controversy was that of Hunt conducting operations pursuant to the full scope of Douglas' authority, and the stay order has the effect of preserving that state of affairs.

Also at the January 14, 1986, hearing, Bauer testified that 15 to 20% of Hunt's gross revenues of approximately $10 million is attributable to its operations under the Douglas certificate. Hunt operated at a profit in 1985. However, if the Douglas certificate were transferred under the terms prescribed in the Commission's October 30, 1985, order, 15 to 20% of Hunt's equipment would probably be idled, and that would "put us in a loss position for 1986." This uncontradicted testimony as to the adverse financial consequences which would result to Hunt if it were not able to operate within the full scope of Douglas' authority sufficiently established the necessity of preserving the status quo prevailing at the time that Douglas and Hunt requested a stay.

■ The Commission's contentions that the circuit court has no authority to grant motor-carrier operating authority, that the circuit court stay order places Hunt in the position of having to operate either illegally or not at all during the pendency of the stay, and that the stay order effectively deletes from the Commission's October 30, 1985, order the analysis and finding necessary to support transfer to Hunt of Douglas' operating authority, may be addressed in a summary fashion. The effect sought to be accomplished by the circuit court in entering its stay order is clear—the court intended that the Commission's October 30, 1985, order, with the exception of the portion thereof which denied Hunt authority to transport various commodities which had been included within the scope of Douglas' operating authority and which thus by inference prohibited Hunt from transporting those commodities, continue in full force and effect during the pendency of the appeal. It is true that the stay order had the effect of conferring upon Hunt additional operating authority which the Commission order under review did not confer upon it. However, the issuance of a stay of an administrative agency order which has this effect is not without precedent. For instance, in *Delta Air Lines, Inc. v. Civil Aeronautics Board* (2d Cir. 1959), 270 F.2d 166, the Civil Aeronautics Board initially granted Delta authority to operate service be-

tween Chicago, Indianapolis and Evansville. However, following a request for a rehearing by two intervenors, and after Delta had already begun service on the route in question, the Civil Aeronautics Board entered an order which had the effect of revoking its previously entered order which authorized Delta to commence service. Delta appealed the second order to the United States Court of Appeals, and the court, on Delta's request, stayed that order pending the outcome of the appeal. The Court of Appeals' stay order had the practical effect of permitting Delta to continue operations on the route in question during the pendency of the appeal. See also *Celotex Corp. v. Pollution Control Board* (1977), 53 Ill. App. 3d 662, 368 N.E.2d 1134 (appellate court decision required Environmental Protection Agency and Pollution Control Board to issue and approve retroactive permit to operate dry-roofing-felt plant).

Since the circuit court's order affects only the portion of the Commission's October 30, 1985, order which declined to include various commodities within Hunt's operating authority, it cannot be said that the stay order deletes from the Commission's order the provisions thereof requiring Hunt to file tariffs. With respect to the Commission's argument that the circuit court's stay order effectively deletes from the Commission's order the analysis and findings necessary to support transfer of Douglas' operating authority to Hunt, it is elemental that a stay order seeks only to preserve the status quo existing on the date of its entry, and in no way addresses the merits of the underlying dispute. Because a stay of an administrative decision does not touch on the merits of the controversy, it cannot be said that such an order deletes essential findings from the administrative decision to which it pertains.

■ We finally consider the Commission's contention that the bond which Hunt filed in the circuit court in order to assure the State of reimbursement for damages caused by the stay, in the event of eventual affirmation of the Commission's October 30, 1985, order, is inadequate because it is unsecured. Subsection 18c—2205(3) of the Illinois Commercial Transportation Law (Ill. Rev. Stat. 1985, ch. 95½, par. 18c—2205(3)) provides that a stay of a Commission order relating to enforcement of the Illinois Commercial Transportation Law does not become effective until a bond is executed, filed and approved by the court. This provision does not, however, specify that the bond must be secured. Where, as here, a statute simply prescribes the filing of a bond as a condition for obtaining a stay pending appeal and does not specify that security is required, and absence of security is not necessarily fatal to the sufficiency of the bond. (4A C.J.S. *Appeal & Error*

sec. 535, at 242 (1957).) (The sole case cited in support of this portion of the Commission's argument does not discuss whether bonds filed in cases of this type need to be secured.) We therefore conclude that the lack of security with respect to Hunt's bond does not require reversal of the circuit court's judgment.

Finding no error in the stay order entered in this cause, we affirm the judgment of the circuit court. Because of our decision, we vacate the stay pending appeal of the circuit court's stay order which we entered on February 28, 1986.

Stay pending appeal vacated and circuit court's stay order affirmed.

GREEN and MORTHLAND, JJ., concur.