*In re* A.J. *et al.*, Minors (The People of the State of Illinois, Petitioner-Appellee, v. Yvonne J., Respondent-Appellant).

First District (3rd Division)   No. 1—94—0396

Opinion filed December 21, 1994.—Rehearing denied March 13, 1995.

Rita A. Fry, Public Defender, of Chicago (Protase M. Tinka, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Susan S. Wigoda, and John J. McKay, Assistant State's Attorneys, of counsel), for the People.

JUSTICE GREIMAN delivered the opinion of the court:

Respondent-appellant Yvonne J. is the birth mother of two minors, seven-year-old A.J., who was born in July 1987, and five-year-old Y.J., who was born in June 1989. On appeal, respondent contends that the trial court's termination of her parental rights, in November 1993, based on her unfitness due to mental illness violated her due process rights and discriminated against her as a mentally impaired person. Respondent also challenges the propriety of the trial court's denial of her motion to stay adoption proceedings pending appeal.

We affirm the trial court's orders.

No factual disputes are presented in this appeal. The record establishes that respondent suffers from a mental illness, has never recognized her disorder, has been hospitalized at various times for her

psychiatric condition, has accepted some out-patient treatment for her mental illness, has been given many opportunities to avail herself of treatment, counseling and referrals, has never lived with the minors, has never acted appropriately in the presence of the minors and is unfit to bear parental duties. The record further demonstrates that the two children have never lived with respondent but rather have lived together with the same foster family since their respective births and the foster parents wish to adopt them. The Department of Children and Family Services (DCFS) developed and pursued a plan to reunite respondent and the minors for several years prior to the decision to provide long-term foster care for the minors and subsequently to terminate respondent's parental rights. Respondent neither suggests otherwise nor disputes these facts. Instead respondent challenges the State's failure to compel her to receive a particular treatment recommended by one psychiatrist in 1988.

According to respondent, the State should have compelled respondent to receive a particular treatment recommended in 1988 by Dr. Blanchard Reeb, a psychiatrist, before the parental termination proceedings were commenced in 1993. In 1988 Dr. Reeb evaluated respondent and recommended a schedule of injectable medication (Prolixin) to ensure that respondent was getting her medication and getting the proper amount of medication at certain intervals. At no time from 1988 to 1993 did respondent seek or follow such treatment nor did the State force such treatment on her.

Following hearings which began in March 1993, the trial court found that the State proved its case by overwhelming evidence, found respondent unfit based on mental illness grounds and terminated her parental rights on November 2, 1993.

Respondent acknowledges that even if the State had compelled her to receive the treatment recommended in 1988, she may or may not have achieved satisfactory progress to withstand the termination of her parental rights. However, according to respondent, the State should have been required to implement the recommended treatment before instituting proceedings to terminate her parental rights. Hence respondent now argues that the State's failure to compel her to follow the care advised by Dr. Reeb in 1988 precludes the State from now terminating her parental rights and that such termination now is a denial of her due process rights. Because even the power of the State has limits, we affirm.

■ The interest of biological parents in the custody of their children is a fundamental liberty interest protected under the fourteenth amendment. *In re Enis* (1988), 121 Ill. 2d 124, 128-29, 520 N.E.2d 362; *Regenold v. Baby Fold, Inc.* (1977), 68 Ill. 2d 419, 438, 369 N.E.2d 858.

Notwithstanding the constitutional protection, a proceeding to involuntarily terminate parental rights may be brought under the Adoption Act (750 ILCS 50/1 *et seq.* (West 1992)), as in the instant case, or the Juvenile Court Act of 1987 (Ill. Rev. Stat. 1989, ch. 37, pars. 802—29, 803—30, 804—27, 805—31). "Regardless of under which Act the termination action is brought, the goals of the proceedings are identical: (1) to determine whether the natural parents are unfit, and if so (2) to determine whether adoption will best serve the child's needs." *In re M.M.* (1993), 156 Ill. 2d 53, 61, 619 N.E.2d 702; *Enis*, 121 Ill. 2d at 130 (parental termination procedures are governed by the Adoption Act and the Juvenile Court Act).

■ A court may terminate a parent's rights where it finds, based on clear and convincing evidence, that the parent is an "unfit person" as defined in section 1(D) of the Adoption Act (Act).[1] *Enis*, 121 Ill. 2d at 130.

Under this statutory scheme, the Act requires a two-part analysis to determine whether or not a parent is unfit due to a form of mental disability. First, competent evidence from the designated categories of experts must show that the parent suffers from a mental disability which prevents the parent from discharging parental responsibilities. Second, sufficient justification must be established to believe that the inability will extend beyond a reasonable time period. *In re J.A.S.* (1994), 255 Ill. App. 3d 822, 824, 627 N.E.2d 770 (two-part test under the Act); *In re K.S.T* (1991), 218 Ill. App. 3d 431, 435, 578 N.E.2d 306; *In re N.F.* (1989), 178 Ill. App. 3d 662, 666, 533 N.E.2d 952.

We agree with respondent's contention that not every parent with a psychiatric illness or condition is *per se* unfit to be a parent and to maintain custody of her children. The statutory scheme does not envision that all parents with a designated mental disability will

---

[1]Section 1(D) of the Adoption Act provides in relevant part:

"D. 'Unfit person' means any person whom the court shall find to be unfit to have a child, without regard to the likelihood that the child will be placed for adoption. The grounds of unfitness are any one or more of the following:

\* \* \*

(p) inability to discharge parental responsibilities supported by competent evidence from a psychiatrist, licensed clinical social worker, or clinical psychologist of mental impairment, mental illness or mental retardation \*\*\*, and there is sufficient justification to believe that the inability to discharge parental responsibilities shall extend beyond a reasonable time period." 750 ILCS 50/1(D)(p) (West Supp. 1993).

have their parental rights terminated. (*In re I.D.* (1990), 205 Ill. App. 3d 543, 549, 563 N.E.2d 1200.) Instead, the Act affects only those parents "who cannot discharge their parental responsibility due to these disabilities *and* whose inability to do so will extend beyond a reasonable time." (Emphasis in original.) *I.D.*, 205 Ill. App. 3d at 549.

A trial court's finding of parental unfitness must be supported by clear and convincing evidence. *In re Adoption of Baby Girl Casale* (1994), 266 Ill. App. 3d 656, 660; *In re J.F.* (1992), 248 Ill. App. 3d 1, 5, 618 N.E.2d 289 (on rehearing, the opinion stands as is pursuant to an order entered on July 20, 1993).

On appeal, however, this court will not reverse the trial court's finding of parental unfitness unless it is against the manifest weight of the evidence. (*In re Adoption of Syck* (1990), 138 Ill. 2d 255, 274, 562 N.E.2d 174; *J.F.*, 248 Ill. App. 3d at 5.) For a finding of parental unfitness to be against the manifest weight of the evidence, the opposite result must be clearly evident from a review of the record. *In re J.P.* (1994), 261 Ill. App. 3d 165, 633 N.E.2d 27 (evidence supported the finding that the mother's mental retardation rendered her unfit under section 1(D)(p)).

■ Regarding the first prong of the Act's test, the present respondent on appeal concedes that her mental illness was established by the State's expert and the record demonstrates that her mental illness precludes her from discharging parental responsibilities.

■ As to the second prong of the test, the Act's language is broad and requires only sufficient justification to support the trial court's finding that the respondent's mental disability will continue beyond a reasonable time frame. (*J.A.S.*, 255 Ill. App. 3d at 824.) A medical prognosis need not be absolutely conclusive to satisfy this requirement of the Act. *J.A.S.*, 255 Ill. App. 3d at 824.

Dr. Reeb testified that without appropriate treatment, respondent would not be able to parent her children in the foreseeable future. For purposes of the Act, "foreseeable future" has been accepted as "beyond a reasonable time period." (*E.g.*, *J.A.S.*, 255 Ill. App. 3d at 824; *In re J.B.* (1990), 198 Ill. App. 3d 495, 498, 555 N.E.2d 1198.) The record demonstrates that respondent's condition has deteriorated since 1987. The evidence further revealed that respondent has a lengthy history of mental illness, received treatment in the past and needs a prolonged course of treatment in the future.

Under the facts of this case, we believe that the trial court's finding of respondent's parental unfitness is based upon clear and convincing evidence.

We are not unsympathetic or insensitive to respondent's plight. Courts do not, and indeed should not, lightly terminate parental rights or summarily dismiss a mentally ill person's rights. The unfit-

ness of a mentally ill parent is grounded on the parent's inability to discharge parental responsibilities, not the parent's inability to control her conduct. The record in the present case demonstrates seven years of significant efforts directed at respondent. The State agency's goal was to reunite respondent with her children. In that regard, the State marshalled the resources available to it to address her mental condition, care for her children and attempt to reunite their family.

Respondent's sole focus on the treatment recommended by Dr. Reeb in 1988 (a schedule of injectable medication as opposed to medicines in capsule-like form) presents a singularly myopic view since it ignores the fact that, at the very least, she was hospitalized in 1987 and in 1989 following the births of her children and received in-patient psychiatric treatment at those times. For reasons not disclosed in the record, respondent was discharged with continuing treatment plans prescribed. Respondent would have us place a burden on the State to compel her, apparently by force if necessary, to take certain treatment and become a fit parent before the State could proceed to terminate her parental rights. The logical extension of respondent's theory is to induce involuntary commitment. We will not, and indeed cannot, impose such an obligation on the State or such forced confinement and treatment on a mentally ill parent who is not otherwise dangerous to herself or others. We are long past the time when mental health professionals would ever advocate such a protocol. Both case law and popular literature such as *One Flew Over The Cuckoo's Nest* (K. Kesey, *One Flew Over The Cuckoo's Nest* (1962)) have changed our views in this regard.

■ Finally, respondent asserts that the trial court abused its discretion in denying her motion to stay adoption proceedings because the ruling discriminates against her on the basis of her mental disability and frustrates this appeal by tying the hands of the appellate court, thereby rendering her appeal right preemptively nugatory. Respondent also argues that the denial of a stay constitutes an abuse of discretion because an *ex parte* conversation with respondent influenced the trial court's ruling.

We initially reject respondent's argument that the trial court denied a stay based on an *ex parte* communication with respondent. The record reveals that when the proceeding to terminate the parental rights of respondent began on March 12, 1993, respondent's attorney moved for a continuance on the ground that his client was not present in the court room. After denying the motion for continuance, the trial judge informed the attorneys that he had received a call from respondent earlier in the morning at 9:30 a.m. Respondent

had asked to speak to Mr. Curtis but the judge informed her that there was no one by the name of Mr. Curtis but there was a man named Mr. Chrisler. When respondent said she would like to talk to Mr. Chrisler, the judge explained that they had no telephone access in calendar 21, so he would handle the call. Respondent stated that she could not come to court that day because she "was fooling around last night" and "just got up." The judge asked respondent how long it would take her to get to court and respondent answered 40 minutes. In denying the motion for continuance, the judge observed that the phone conversation occurred at 9:30 a.m., that respondent told him she would get to court in 40 minutes, and that the current time was 11 a.m., *i.e.*, $1^1/2$ hours after the phone conversation. In light of these facts, we do not believe that any factual or legal nexus exists between the trial court's denying a motion for a continuance in March 1993 and denying a motion for a stay in November 1993.

A trial court is afforded discretion in issuing stay orders. (*Couri v. Korn* (1990), 203 Ill. App. 3d 1091, 1094, 562 N.E.2d 235.) The party seeking a stay bears the burden of proving adequate justification for it. (*Douglas Transit, Inc. v. Illinois Commerce Comm'n* (1986), 145 Ill. App. 3d 115, 121, 495 N.E.2d 620.) The movant must present a substantial case on the merits and show that the balance of the equitable factors weighs in favor of granting the stay. (*Stacke v. Bates* (1990), 138 Ill. 2d 295, 309, 562 N.E.2d 192.) Neither a trial court nor an appellate court must stay the enforcement of a judgment which is pending on appeal. See *Pinnacle Corp. v. Village of Lake in the Hills* (1994), 258 Ill. App. 3d 205, 208, 630 N.E.2d 502.

Once a parent's rights have been terminated, as in the present case, the court may give another party the right to consent to the adoption of the children. *In re P.F.* (1994), 265 Ill. App. 3d 1092, 1101.

The Juvenile Court Act commands the State to reunify a minor with his family "where it is in the best interests of the minor." (705 ILCS 405/1—5(2)(b), 2—14(a) (West Supp. 1993).) However, "if reunification is not in the best interests of the minor" the State is commanded to find "another permanent home for the minor." (705 ILCS 405/1—5(2)(b), 2—14(a) (West Supp. 1993).) Furthermore, the intent of the Juvenile Court Act provides that the State "will act in a just and speedy manner to determine" the best interests of the minor. 705 ILCS 405/2—14(a) (West Supp. 1993).

We find that respondent in the present case failed to satisfy the burden of justifying the issuance of a stay order and thus we cannot say that the trial court abused its discretion in denying her motion to stay adoption proceedings. For over four years, various DCFS workers monitored respondent's case. Several administrative case reviews

evaluated respondent's progress toward reunification and each evaluation was unsatisfactory. During the four-year time period, the goals set for each individual minor (*i.e.*, A.J. and Y.J.) sometimes varied between reunification or foster care. However, in 1991, the goal for both minors was long-term foster care. The record in this case evinces a lengthy, earnest and diligent attempt to reunify respondent and her children. When reunification efforts proved unsuccessful and long-term foster care was thus determined to be in the best interest of the minors, the State was then statutorily charged with finding another permanent home for the minors.

For all the foregoing reasons, we affirm the orders of the trial court.

Affirmed.

TULLY, P.J., and RIZZI, J., concur.