NOTICE
Decision filed 01/23/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 241166-U

NOS. 5-24-1166, 5-24-1167 cons.

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| *In re* AMERIAH W. and DeMARIO W., Minors | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Jackson County. |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | |
| v. | ) | Nos. 20-JA-37, 20-JA-41 |
| | ) | |
| Veronica C., | ) | Honorable |
| | ) | Ella L. Travelstead, |
| Respondent-Appellant). | ) | Judge, presiding. |

_____

PRESIDING JUSTICE McHANEY delivered the judgment of the court.
Justices Cates and Barberis concurred in the judgment.

**ORDER**

¶ 1    *Held*: Where the State's evidence at the termination hearing consisted entirely of hearsay from a single witness who lacked sufficient firsthand knowledge of the respondent's reasonable efforts or progress regarding her service plan goals, the trial court's finding of unfitness was against the manifest weight of the evidence.

¶ 2                                  I. BACKGROUND

¶ 3    On September 29, 2020, the State filed a petition for adjudication of wardship alleging that the minor, Ameriah W., D.O.B. 6/12/2020, was neglected due to severe malnourishment. The petition designated the respondent, Veronica C. (hereinafter "Mother"), as the child's mother and

1

Daniel W.[1] as the natural father. On November 5, 2020, the State filed a petition for adjudication of wardship alleging that Ameriah's sibling, DeMario W., D.O.B. 4/27/2018, was neglected due to an injurious environment based upon "multiple and repeated instances of domestic violence," both verbal and physical, between the parents. Only Ameriah was taken into shelter care.

¶ 4    On March 3, 2021, the trial court found both minors to be neglected and set a dispositional hearing for March 17, 2021. At the conclusion of that hearing, the trial court found Mother to be unfit, made the minors wards of the court, and set the permanency goal at return home in 12 months.

¶ 5    Over the course of the next four years, the record generated 11 permanency reports and 11 permanency hearings, as well as numerous other hearings, reports, addendums, evaluations, and assessments, all of which established, in essence, that for every step forward taken by Mother, she took two steps back. The State finally filed a petition for termination of parental rights on March 27, 2023. On June 27, 2023, Mother signed a specific consent to adoption.

¶ 6    The hearing on the State's termination petition was held on September 24, 2024. The State called on one witness, Beth Eubanks, who was the foster care supervisor for Lutheran Social Services (LSS) and had been the supervisor over Ameriah's case since October 2023. Eubanks testified that Mother had completed some services within her assessment, but not all. When asked which services Mother had not completed, Eubanks stated:

> "So she was engaged in all her services from what I read from the previous service plan from the previous worker. Those services were more of a concern that mom was not able

---

[1]DNA test results later excluded him as the father of Ameriah W., and he is not a party to this appeal.

to display things that she had learned, you know, appropriate parenting techniques, et cetera, during her treatment."

When asked if it was her opinion that Mother had not made reasonable progress toward completion of her services, Eubanks responded, "That is what I gathered from the service plan that I had read." When asked whether Mother completed services during the specific time frame of May of 2022 through February of 2023, Eubanks answered:

"She did complete a parenting program through Cornerstone. She completed domestic violence services, I believe, at the Women's Center. She was engaged in mental health services, but she did not complete those services. Again, what I understand from the previous worker that rated those service plans was that there was potential inability for her to be able to demonstrate the services being learned."

¶ 7    Neither Mother nor the GAL presented any evidence. After brief argument by the State, the trial court ruled as follows:

"The Court has reviewed the pleadings, the entirety of the file in this matter, and considered the testimony, and finds by clear and convincing evidence that the Respondent Veronica [C.] is an unfit person to have these children because she has failed to make reasonable progress towards return of the children to a parent during a nine-month period following the adjudication, specifically May 20, 2022 through February 20 of 2023."

¶ 8    The trial court immediately proceeded to a best interest hearing where the State again called Eubanks as its only witness. Again, neither the GAL nor Mother presented any evidence. After brief argument by the State and Mother's counsel, the trial court then ruled:

"[B]ased on a consideration of all those factors, the Court finds by a preponderance of the evidence that it's in the best interest of both minors that all parental rights of Veronica [C.]

3

be terminated at this time. The goal of this case has been set for adoption. That will remain the goal."

A written order was entered by the trial court on September 30, 2024, from which Mother filed a timely appeal.

¶ 9                                    II. ANALYSIS

¶ 10    The legal authority for the involuntary termination of parental rights in Illinois is found in the Juvenile Court Act of 1987 (705 ILCS 405/1-1 *et seq.* (West 2020)) and in the Adoption Act (750 ILCS 50/0.01 *et seq.* (West 2020)). *In re J.L.*, 236 Ill. 2d 329, 337 (2010) (citing *In re E.B.*, 231 Ill. 2d 459, 463 (2008)). The procedural basis for the involuntary termination of parental rights is found in section 2-29 of the Juvenile Court Act of 1987 (705 ILCS 405/2-29(2) (West 2020)). The procedure involves two steps. With step one, the State must prove, by clear and convincing evidence, that the parent is an "unfit person" as defined by the Adoption Act. *Id.*; 750 ILCS 50/1(D) (West 2020); *In re A.J.*, 269 Ill. App. 3d 824, 828 (1994). If the trial court finds that the parent is unfit, the process moves to step two, where the State must prove, by a preponderance of the evidence, that it is in the child's best interest that the parent's rights be terminated. 705 ILCS 405/2-29(2) (West 2020); *In re J.L.*, 236 Ill. 2d at 337-38.

¶ 11    On appeal from a trial court's findings that a parent is unfit and that terminating the parental rights is in the child's best interest, the reviewing court must not retry the case but, instead, must review the trial court's findings to determine if the findings are against the manifest weight of the evidence. *In re A.W.*, 231 Ill. 2d 92, 104 (2008). The trial court's finding of unfitness is given great deference because the court had the best opportunity to view and evaluate the parties and their testimony. *In re Daphnie E.*, 368 Ill. App. 3d 1052, 1064 (2006). Accordingly, on appeal, we will not reweigh the evidence or reassess the credibility of the witnesses. *In re M.A.*, 325 Ill. App. 3d

4

387, 391 (2001). A decision is contrary to the manifest weight of the evidence if the opposite conclusion is apparent or when findings appear to be unreasonable, arbitrary, or not based on the evidence presented. *In re Vanessa K.*, 2011 IL App (3d) 100545, ¶ 28 (citing *In re Joseph M.*, 398 Ill. App. 3d 1086, 1089 (2010)); *In re S.R.*, 326 Ill. App. 3d 356, 360-61 (2001).

¶ 12     Reasonable progress, which is assessed under an objective standard, exists when a parent's compliance with the service plan and the trial court's directives "is sufficiently demonstrable and of such a quality that the court, in the *near future*, will be able to order the child returned to parental custody." (Emphasis in original.) *In re L.L.S.*, 218 Ill. App. 3d 444, 461 (1991). A parent fails to make reasonable progress toward the return of the child when the parent fails " 'to substantially fulfill his or her obligations under the service plan and correct the conditions that brought the child into care.' " *In re C.N.*, 196 Ill. 2d 181, 217 (2001) (quoting 750 ILCS 50/1(D)(m) (West Supp. 1999)). A finding of unfitness is appropriate if "the court will not be able to return the child home in the near future, despite ample time and opportunity for compliance with the court's directives." *In re Ta. T.*, 2021 IL App (4th) 200658, ¶ 55.

¶ 13     The evidence of unfitness was presented through an LSS supervisor who had virtually no personal knowledge of the case and was testifying based upon her review of an unidentified caseworker's reports. These reports were not admitted into evidence.[2] Thus, while no objection was raised by any attorney, the State's evidence was predicated entirely on hearsay. Further, there was no evidence or testimony regarding the respondent's specific service plan requirements and how she failed to make substantial progress. The minimal testimony about some of those service plan requirements was only in the context of explaining what she *did* complete. The record is bereft

---

[2]The State could have requested the trial court to take judicial notice or availed itself of the Juvenile Court Act's business records exception (705 ILCS 405/2-18(4)(a) (West 2020)).

5

of evidence about what was not done, or any elaboration on the repeated assertion that Mother lacked the capacity to complete the service plan requirements. There was simply no evidence from which the trial court could measure the level of progress Mother made or failed to make, and the scant evidence that was presented only concerned the services or tasks that Mother was in the process of completing. Despite the deferential standard of review, the evidence in this case is simply insufficient to allow this court to find that the State met its burden of proof. Significantly, the evidence to support a fitness finding was so glaringly absent that the State conceded error in its brief.

¶ 14                                     III. CONCLUSION

¶ 15    Accordingly, because of the absence of sufficient evidence to support a finding of unfitness, we find that the judgment of the trial court is manifestly against the weight of the evidence. As such, the judgment of the trial court finding Mother an unfit parent, as well as the judgment of the trial court terminating Mother's parental rights, must be reversed, and this case is remanded for further proceedings. Further, due to the length of time these children have languished in care, the clerk is directed to issue the mandate immediately.

¶ 16    Reversed and remanded.