Docket Nos. 104854, 104871 cons.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

*In re* A.W. (The People of the State of Illinois, Appellee and Cross-Appellant, v. Eugene W., Appellant and Cross-Appellee).

*Opinion filed September 18, 2008.*

JUSTICE KILBRIDE delivered the judgment of the court, with opinion.

Chief Justice Fitzgerald and Justices Freeman, Thomas, Garman, Karmeier, and Burke concurred in the judgment and opinion.

## OPINION

The circuit court of Peoria County found A.W., a minor, neglected and made him a ward of the court. Eugene W., the minor's father, appealed. The appellate court upheld the neglect and unfitness findings, but vacated and remanded the cause, finding a violation of Eugene's fifth amendment right against self-incrimination because he was not allowed to complete sex offender counseling without admitting he committed a sex offense. 373 Ill. App. 3d 574.

We allowed and consolidated the petitions for leave to appeal filed by both Eugene and the State. 210 Ill. 2d R. 315. On appeal, Eugene contends the circuit court erred by finding: (1) the doctrine of collateral estoppel barred him from relitigating whether he is a sexual

offender based on a prior court's ruling in another juvenile proceeding; (2) A.W. was neglected; and (3) Eugene was unfit to care for A.W. The State contends in its appeal that the appellate court erred in holding the circuit court violated Eugene's fifth amendment right against self-incrimination. We affirm the circuit court judgment and reverse that part of the appellate court judgment vacating the circuit court judgment.

## BACKGROUND

In 2005, the State filed a petition alleging neglect of A.W., a minor. The petition stated the minor's environment was injurious to his welfare because: (1) Eugene was found unfit in a 2004 case involving A.W.'s sibling; (2) DCFS "indicated" Eugene for sexual molestation in 1998 and 2002; and (3) Eugene failed to complete court-ordered sex offender counseling. The petition also alleged A.W.'s mother was previously found unfit in 1999, she was found to remain unfit in 2001, and there was no subsequent order finding the mother fit.

At the adjudicatory hearing on January 4, 2006, the State submitted certified copies of the 2004 neglect adjudication of the minor's older sibling. Eugene did not object. The 2004 petition included sexual abuse allegations of the 1998 and 2002 DCFS indicated findings. The circuit court in the 2004 case found the State proved the allegations of the 1998 and 2002 sexual molestations by a preponderance of the evidence, and found the minor sibling neglected and both parents unfit. As a result of the disposition, Eugene was assigned a permanency goal of completing sex offender counseling.

Also at the adjudicatory hearing in this case, Eugene's caseworker testified the mother did not complete individual counseling after five years. The mother admitted she did not comply with required testing for illegal drug usage. The caseworker noted that Eugene completed drug and alcohol assessments and no treatment was recommended. Eugene also completed a sex offender assessment, domestic violence classes, and random drug drops.

Eugene testified and confirmed that he completed successfully a domestic violence class. Eugene also acknowledged the DCFS

"indicated reports" of sexual molestation and the referral to sex offender counseling, but insisted he was not convicted of any sex crimes. Based on collateral estoppel, the circuit court prohibited Eugene from presenting evidence to refute the DCFS indications of sexual abuse proved in the 2004 case. The circuit court found the 1998 and 2002 reports of sexual abuse in the sibling's 2004 neglect proceeding were identical to the 1998 and 2002 reports of sexual abuse in this proceeding. The court noted that, in the 2004 sibling's case, the juvenile court judge found the allegations of sexual molestation in 1998 and 2002 were proven by a preponderance of the evidence and the findings were affirmed on appeal. Eugene was permitted to make an offer of proof consisting largely of previous testimony denying he sexually abused anyone in 1998 and 2002.

The circuit court determined Eugene had not overcome the finding of unfitness from the sibling's prior case because he failed to complete sex offender counseling. The circuit court concluded the State proved A.W. was living in an injurious environment and both parents "remain unfit."

At the dispositional hearing, the circuit court took judicial notice of the appellate court decision in the 2004 case. The court also reviewed the social history report, the counseling summary report, and the foster-care progress report prepared for the case. These reports disclosed the mother and Eugene denied being romantically involved. The mother has four other children in state care. She has been in and out of substance abuse treatment for several years and she has difficulty maintaining employment. The reports showed the mother failed to comply with drug testing. She struggled with anger. She was not making significant progress in counseling and she has a history of unstable housing. The mother admitted putting her kids at risk and in jeopardy.

The reports indicate that during sex offender counseling Eugene made minimal progress because he failed to attend regularly and continued to deny the reported incidents of abuse. After being assigned a counselor in 2005, Eugene missed six scheduled appointments. Eugene also attended sessions with a different sex abuse counselor, but he was discharged in March 2006 for "being uncooperative." Eugene's caseworker encouraged him to return to sex

abuse counseling "to at least learn something from the sessions" even if he did not admit any sexual offenses.

Eugene testified that he attended sex offender counseling, but the counselor would not continue the program unless he admitted to committing a sex offense. According to Eugene, he was unwilling to incriminate himself and the therapist discharged him unsuccessfully from the program. Thus, based on the prior adjudication of unfitness continuing into 2006, the circuit court found Eugene unfit to care for A.W.

The appellate court found the trial court properly ruled that the doctrine of collateral estoppel barred Eugene from introducing evidence to rebut the sexual abuse allegations. The appellate court also upheld the circuit court's neglect and unfitness determinations. The appellate court, however, concluded that Eugene's constitutional right against self-incrimination was violated when he was prevented from completing sex offender counseling based on his refusal to incriminate himself. The appellate court vacated the judgment of the circuit court and remanded the cause to reopen the dispositional hearing for the limited purpose of allowing Eugene to propose his own service plan that would allow him to complete sex offender counseling without incriminating himself.

We allowed Eugene's petition for leave to appeal the neglect and unfitness determinations. 210 Ill. 2d R. 315. We also allowed the State's petition for leave to appeal the reversal of the dispositional order (210 Ill. 2d R. 315), and consolidated both appeals. We permitted the office of the Cook County public guardian to file an *amicus curiae* brief. 155 Ill. 2d R. 345.


## I. ANALYSIS

On appeal, Eugene challenges the circuit court's collateral estoppel ruling, as well as its neglect and unfitness findings. In its appeal, the State contends the appellate court erred in concluding that Eugene's fifth amendment rights were violated.


## A. Collateral Estoppel

Eugene contends the circuit court erred in ruling that collateral estoppel bars him from introducing evidence to refute the State's

allegation that he is a sex offender. Specifically, Eugene's brief states he "sought to introduce evidence pertaining to the DCFS indicated reports relating to his alleged sexual molestation in November of 1998 and September of 2002." The State counters that the circuit court properly refused to allow Eugene to relitigate the issue of the 1998 and 2002 sexual abuses decided in the 2004 case.

The doctrine of collateral estoppel "bars relitigation of an issue already decided in a prior case." *People v. Tenner*, 206 Ill. 2d 381, 396 (2002). We review *de novo* the applicability of the collateral estoppel doctrine as a question of law. *People v. Sutherland*, 223 Ill. 2d 187, 197 (2006).

There are three requirements for application of collateral estoppel:

> "(1) the issue decided in the prior adjudication is identical with the one presented in the suit in question, (2) there was a final judgment on the merits in the prior adjudication, and (3) the party against whom estoppel is asserted was a party or in privity with a party to the prior adjudication." *Gumma v. White*, 216 Ill. 2d 23, 38 (2005).

Additionally, "[f]or purposes of applying the doctrine of collateral estoppel, finality requires that the potential for appellate review must have been exhausted." *Ballweg v. City of Springfield*, 114 Ill. 2d 107, 113 (1986).

Here, Eugene sought to introduce evidence to refute the DCFS "indicated reports"of alleged sexual molestations in November 1998 and September 2002. The record does not show that Eugene sought administrative decision review, administrative decision appeal, or judicial review of the DCFS "indicated" findings. See 325 ILCS 5/7.16 (West 2004); 735 ILCS 5/3–101 *et seq*. (West 2004); 89 Ill. Adm. Code §§316.90, 316.100 (2002). An "indicated report" is a report of abuse or neglect supported by credible evidence following a DCFS investigation. 325 ILCS 5/3 (West 2004); 89 Ill. Adm. Code §300.20 (2002). "Credible evidence" means "the available facts when viewed in light of the surrounding circumstances would cause a reasonable person to believe that a child was abused or neglected." 89 Ill. Adm. Code §300.20 (2002); *Lyon v. Department of Children & Family Services*, 209 Ill. 2d 264, 267 (2004).

The circuit court in this case also reviewed certified copies of the 2004 adjudication of neglect of the minor's older sibling based on the State proving the allegations of the 1998 and 2002 "indicated reports" of sexual molestations by a preponderance of the evidence. The record indicates the circuit court allowed Eugene to make an offer of proof. The offer of proof reiterated Eugene's 2004 testimony denying sexual abuse of anyone in 1998 and 2002.

Eugene admits the threshold requirements for collateral estoppel were met. First, the issue decided in the 2004 prior adjudication–whether Eugene is a sex offender based on the 1998 and 2002 DCFS "indicated reports"–is identical with the issue presented in this case. Second, there was a final judgment on the merits in the 2004 prior adjudication and the court determined the State proved that Eugene is a sex offender based on the 1998 and 2002 sexual abuses. Finally, Eugene is the party against whom estoppel is asserted and he was a party to the prior 2004 adjudication. Additionally, Eugene had the opportunity to litigate fully the 1998 and 2002 sex abuse allegations in the 2004 juvenile adjudication and the appellate court affirmed that determination. Therefore, it cannot be seriously disputed that the trial court properly ruled the doctrine of collateral estoppel barred Eugene from introducing evidence to refute the prior determination of sexual abuse of the 1998 and 2002 "indicated reports." We agree with the circuit court that collateral estoppel applied to Eugene's proffered testimony.

Eugene urges this court to hold the application of collateral estoppel was inequitable in this case because juvenile cases employ the lower "preponderance of the evidence standard" and subsequent findings are predicated on previous decisions. This would, however, be contrary to the legislative directive of section 2–18(3) of the Act, providing:

> "proof of the abuse, neglect or dependency of one minor shall be admissible evidence on the issue of the abuse, neglect or dependency of any other minor for whom the respondent is responsible." 705 ILCS 405/2–18(3) (West 2006).

Eugene also argues it was inequitable to apply collateral estoppel to bar him from introducing evidence that he did not pose a risk to this particular child. The collateral estoppel ruling did not prevent Eugene from presenting evidence that later events overcame the

inferences arising from the prior sexual abuse. Eugene was not prohibited from introducing evidence that he did not pose a risk to the child at issue in this case. Accordingly, we find no unfairness in applying collateral estoppel in this case. We therefore affirm the appellate court's ruling that the trial court did not err in applying collateral estoppel to prevent Eugene from relitigating the prior determination that the State proved the 1998 and 2002 sexual abuses.

## B. Neglect Finding

Eugene also contends the circuit court erred in finding the minor neglected by reason of an injurious environment. Eugene claims there was no evidence he actually neglected the minor in this case and it was inappropriate to apply a theory of anticipatory neglect, based on a finding that he abused other children. The State argues the evidence supported the circuit court's finding that the minor was neglected due to an injurious environment.

We will reverse a juvenile court's finding that a minor is neglected only if it is contrary to the manifest weight of the evidence. *In re Arthur H.*, 212 Ill. 2d 441, 464 (2004). "A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident." *In re Arthur H.*, 212 Ill. 2d at 464. In *In re D.F.*, 201 Ill. 2d 476, 499 (2002), this court explained:

> "Under a manifest weight of the evidence standard, we give deference to the trial court as the finder of fact because it is in the best position to observe the conduct and demeanor of the parties and the witnesses and has a degree of familiarity with the evidence that a reviewing court cannot possibly obtain. A reviewing court, therefore, must not substitute its judgment for that of the trial court regarding the credibility of witnesses, the weight to be given to the evidence, or the inferences to be drawn." *In re D.F.*, 201 Ill. 2d at 498-99, citing *In re A.P.*, 179 Ill. 2d 184, 204 (1997).

Section 2–3(1)(b) of the Juvenile Court Act of 1987 (Act) (705 ILCS 405/2–3(1)(b) (West 2006)) defines neglect to include being subjected to an environment injurious to the minor's welfare. Section 2–18(3) of the Act provides:

"proof of the abuse, neglect or dependency of one minor shall be admissible evidence on the issue of the abuse, neglect or dependency of any other minor for whom the respondent is responsible." 705 ILCS 405/2–18(3) (West 2006).

This court has recognized there is no *per se* rule that abuse or neglect of one minor "conclusively establishes the neglect of another child." *In re Arthur H*., 212 Ill. 2d at 468. As stated in *In re Arthur H*., "[e]ach case concerning the adjudication of minors, including those cases pursued under a theory of anticipatory neglect based upon the neglect of a child's sibling must be reviewed according to its own facts." *In re Arthur H*., 212 Ill. 2d at 468-69.

The issue here is whether the minor is neglected, not whether one or both of the minor's parents are responsible for the neglect. *In re Arthur H*., 212 Ill. 2d at 467. The State's petition alleged anticipatory neglect, based on evidence concerning both the minor's mother and Eugene. The record indicates both Eugene and the minor's mother stipulated each was previously found unfit and there was no subsequent finding of fitness. Eugene does not contest the evidence of the mother's neglect or her failing to ensure a safe and nurturing environment for the minor. This alone was sufficient to support the circuit court's finding of neglect.

Nonetheless, the circuit court's finding of neglect is also supported by the State's evidence establishing Eugene's history of sexually abusing minors in his care. In addition, the record indicates the minor's mother and Eugene continued to have a relationship and the minor would not be adequately protected from the injurious environment if placed in either parent's care.

Accordingly, we conclude the circuit court's finding of neglect due to an injurious environment was not against the manifest weight of the evidence. We affirm the circuit court's neglect finding.

C. Unfitness Finding

Eugene also contends the circuit court erred in finding him unfit. Eugene argues the circuit court improperly relied on a past finding of unfitness and the State presented no evidence proving he continued to pose a risk to any child. Specifically, Eugene asserts that even assuming he previously sexually abused female children, there was no

evidence he would ever sexually abuse male children. Further, Eugene submits, even assuming any past sexual offenses, the absence of any criminal charges against him suggests he has acquired the capacity to avoid behavior that put him at risk of reoffending. The State responds that Eugene's history of sexually abusing minor relatives in his care justified the circuit court's finding that Eugene is unfit.

Upon finding the parents of a neglected child "unfit," section 2–27 of the Act authorizes the court to place the child in the custody of a legal guardian when it is in the child's best interest. 705 ILCS 405/2–27 (West 2006). We will reverse a circuit court's finding of unfitness only if the finding is against the manifest weight of the evidence. *In re D.F.*, 201 Ill. 2d at 498. We will conclude "[a] finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident." *In re Arthur H.*, 212 Ill. 2d at 464. We give deference to the trial court as the finder of fact, and will not substitute our judgment for that of the trial court on the credibility of witnesses, the weight given the evidence, or inferences drawn from the evidence. *In re D.F.*, 201 Ill. 2d at 498-99.

Here, the circuit court found Eugene unfit to care for the minor based on the 2004 prior adjudication of unfitness and his failure to correct the conditions that led to the 2004 unfitness determination. Specifically, the circuit court reviewed the appellate court decision from Eugene's prior adjudication of unfitness. The trial court noted that in the prior adjudication:

> "The State introduced investigative files of two DCFS reports indicating that respondent sexually molested and exploited young girls who were members of his own family in '97 and '98. The record shows that the Respondent never appealed the indicated reports, no showing he pursued any counseling, treatment or other remedial services to ensure that another child in his care would be safe."

The circuit court acknowledged the appellate court's prior determination that "[t]he material in the investigative file gave rise to a reasonable inference that a young child placed in Respondent's care would be at risk of being abused by him." The circuit court found Eugene unfit because he failed to overcome the main hurdle that led to these cases by not completing sex offender counseling.

As the State correctly points out, this court has concluded: "evidence of neglect toward one child may be relevant to the question of a parent's fitness with respect to another child." *In re D.F.*, 201 Ill. 2d at 501. Based on the previous finding of unfitness, affirmed on appeal, together with Eugene's failure to produce any evidence of correcting the behavior that led to the prior finding of unfitness, we conclude the trial court did not err in finding Eugene unfit in this case. Although given the opportunity, Eugene did not offer any evidence that he has even attempted to seek out or complete any alternative sex offender counseling.

Based on our review of the record, we cannot say the circuit court's determination was against the manifest weight of the evidence. We therefore affirm the circuit court's finding of unfitness.

### D. Fifth Amendment Right Against Self-Incrimination

Finally, we address the State's argument that the circuit court did not violate Eugene's fifth amendment right against self-incrimination when the court relied on Eugene's failure to complete sex offender counseling as a reason for finding Eugene unfit. The State contends the appellate court erroneously concluded that the circuit court required Eugene to admit to committing a sex offense when the circuit court never imposed such a requirement.

Eugene argues he was unsuccessfully discharged from sex offender counseling because he would not admit past sexual offenses. Eugene claims he was deprived of custody of the child in this case as a sanction for exercising his constitutional right against self-incrimination.

"The standard of review for determining whether an individual's constitutional rights have been violated is *de novo*." *In re Robert S.*, 213 Ill. 2d 30, 45 (2004). The fifth amendment to the United States Constitution provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const., amend. V. This provision applies to the states through the fourteenth amendment (U.S. Const., amend. XIV). *Allen v. Illinois*, 478 U.S. 364, 368, 92 L. Ed. 2d 296, 303, 106 S. Ct. 2988, 2991 (1986). The fifth amendment privilege against self-incrimination gives a person the right to refuse to testify against himself or herself when the person is a defendant in

a criminal trial, or any other civil or criminal proceeding when the testimony may incriminate the person in future criminal proceedings. *Allen*, 478 U.S. at 368, 92 L. Ed. 2d at 303-04, 106 S. Ct. at 2991. "[W]hen a State compels testimony by threatening to inflict potent sanctions unless the constitutional privilege is surrendered, that testimony is obtained in violation of the Fifth Amendment ***." *Lefkowitz v. Cunningham*, 431 U.S. 801, 805, 53 L. Ed. 2d 1, 7, 97 S. Ct. 2132, 2135 (1977).

The appellate court here relied on *In re L.F.*, 306 Ill. App. 3d 748 (1999). In that case, the State petitioned to have the respondent mother's minor children adjudicated neglected based on the death of the mother's foster child. The trial court in *In re L.F.* changed the permanency goal to "substitute care pending termination of parental rights" of the mother's biological children when she would not admit responsibility for maltreatment that caused the foster child's death. The mother argued her fifth amendment right against self-incrimination was violated.

The appellate court in *In re L.F.* reviewed case law from other state courts that have found it constitutionally impermissible to order a parent to choose between losing parental rights or waiving the right against self-incrimination. *In re L.F.*, 306 Ill. App. 3d at 753 (citing *In re Clifford M.*, 6 Neb. App. 754, 765, 577 N.W.2d 547, 554 (1998), *Mullin v. Phelps*, 162 Vt. 250, 268, 647 A.2d 714, 724-25 (1994), *In re Welfare of J.G.W.*, 433 N.W.2d 885, 886 (Minn. 1989), and *In re Welfare of J.W.*, 415 N.W.2d 879, 883 (Minn. 1987)). The appellate court recognized:

> "there is a very fine but important distinction between taking steps to terminate a parent's rights based specifically on a refusal to waive a right against self-incrimination and doing so based upon a parent's failure to comply with an order for meaningful therapy." *In re L.F.*, 306 Ill. App. 3d at 753.

The appellate court rejected the trial judge's ruling that the fifth amendment was not implicated because the juvenile permanency review hearing was civil in nature. *In re L.F.*, 306 Ill. App. 3d at 754. The appellate court held the trial court violated the mother's right against self-incrimination by asking her to admit to a crime that could be used against her in a subsequent criminal proceeding and changing

the permanency goal when she exercised her right. *In re L.F.*, 306 Ill. App. 3d at 754.

In the instant case, the appellate court relied on *In re L.F.* in finding a violation of Eugene's fifth amendment right. The appellate court concluded Eugene "was forced to make the same choice as the respondent in *L.F.*: he had to admit to having committed a sex offense in order to complete the last task or risk losing his child." 373 Ill. App. 3d at 579.

We agree with the rationale of *In re L.F.*, that the fifth amendment right against self-incrimination applies to juvenile proceedings. See *Lefkowitz*, 431 U.S. at 805, 53 L. Ed. 2d at 7, 97 S. Ct. at 2135 (holding that the fifth amendment is violated when the State compels a surrender of the constitutional privilege against self-incrimination by threatening "potent sanctions"). We agree with those courts that have held a juvenile court may not compel a parent to admit to a crime that could be used against him or her in a subsequent criminal proceeding by threatening the loss of parental rights. See *In re Clifford M.*, 6 Neb. App. at 765, 577 N.W.2d at 554; *Mullin*, 162 Vt. at 268, 647 A.2d at 724-25; *In re Welfare of J.G.W.*, 433 N.W.2d at 886; *In re Welfare of J.W.*, 415 N.W.2d at 883. Such an action would clearly violate the fifth amendment protection against self-incrimination. Accordingly, a trial court may order a service plan that requires a parent to engage in effective counseling or therapy, but may not compel counseling or therapy requiring the parent to admit to committing a crime. See *In re L.F.*, 306 Ill. App. 3d at 754.

Nevertheless, we find this case distinguishable from *In re L.F.* As the State points out, it is undisputed that the circuit court did not specifically require Eugene to admit any wrongdoing. The circuit court did not order Eugene to complete a specific program requiring him to admit abuse.

We have examined the Iowa Supreme Court case of *In re E.H.*, 578 N.W.2d 243 (Iowa 1998), and find its reasoning persuasive. In that case, the court reviewed a father's claim that a court order requiring him to undergo sex offender therapy effectively required him to incriminate himself because any sex offender treatment program requires an admission of sexual abuse. The court rejected his claim for a failure of proof. *In re E.H.*, 578 N.W.2d at 250. The court reasoned:

-12-

"The juvenile court did not require a particular type of program, nor did it specify where [the father] should obtain treatment. *** Finally, there is no evidence in the record, other than the assertions of [the father] that all treatment programs would require an admission of sexual abuse ***. The existence of such a universal requirement is not a matter appropriate for judicial notice. [Citation.] Therefore, the father's failure of proof is fatal to his constitutional claim." *In re E.H.*, 578 N.W.2d at 250.

The Iowa Supreme Court reached a similar result in *In re C.H.*, 652 N.W.2d 144 (Iowa 2002). There, the court found no evidence the State required the father to complete any particular sex offender treatment program or that the State did not approve of his participation in a program that would not require admission of guilt. The court stated:

"The permanency plan merely required treatment. *** Under such facts, we find [the father] failed to prove the State's case permanency plan effectively constituted a requirement that [the father] must incriminate himself." *In re C.H.*, 652 N.W.2d at 150.

Additionally, a federal court has rejected a similar claim in *Doe v. Sauer*, 186 F.3d 903 (8th Cir. 1999). In *Doe*, a prisoner argued he was denied parole based on his refusal to enter a sex offender treatment program that he alleged would require him to admit to sexual offenses other than the offense of his conviction. The court found there was no evidence in the record to support the prisoner's allegation. *Doe*, 186 F.3d at 905.

Here, Eugene presented no evidence that there are no other treatment programs available offering sex offender counseling without requiring an admission of sexual abuse. Moreover, the record in this case fails to support the appellate court's conclusion that the circuit court's order had the effect of requiring Eugene to incriminate himself. Additionally, the record contains no evidence that Eugene informed the circuit court in the sibling's case that he was having difficulty with the sex offender counseling, or that he asked the court to assist him in locating alternative counseling.

Eugene's caseworker urged him to return to sex offender counseling to see if progress was possible without making any admission of past abuse. Yet Eugene refused to do so. Instead, Eugene waited until the dispositional hearing in this case to argue the circuit court should disregard his failure to comply with the sex offender counseling requirement. As the Iowa Supreme Court held in *In re C.H.*, 652 N.W.2d at 148, "voicing complaints regarding the adequacy of services to a social worker is not sufficient. A parent must inform the juvenile court of such challenge."

Under the facts of this case, we find Eugene failed to prove a violation of his constitutional rights. Further, the record fails to support the appellate court's holding that the circuit court order required Eugene to incriminate himself. We hold the circuit court did not violate Eugene's fifth amendment right against self-incrimination. We therefore reverse the appellate court's contrary holding.

## CONCLUSION

We affirm the circuit court rulings that: (1) the doctrine of collateral estoppel barred Eugene from relitigating prior DCFS indicated reports of sexual abuse and the 2004 adjudication; (2) A.W. was neglected; and (3) Eugene was unfit to care for A.W. We reverse that part of the appellate court decision holding that the circuit court violated Eugene's fifth amendment right against self-incrimination.

*Appellate court judgment affirmed in part*
*and reversed in part;*
*circuit court judgment affirmed.*