NOTICE

Decision filed 12/21/21. The text of this decision may be changed or corrected prior to the filing of a Peti ion for Rehearing or the disposition of the same.

2021 IL App (5th) 210068-U

NOS. 5-21-0068, 5-21-0069, 5-21-0070,

5-21-0071 cons.

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| *In re* Ch.W., Ca.W., L.W., and M.W., Minors | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Madison County. |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | Nos. 20-JA-195, 20-JA-196, |
| v. | ) | 20-JA-197, 20-JA-198 |
| | ) | |
| Beau W., | ) | Honorable |
| | ) | Martin J. Mengarelli, |
| Respondent-Appellant). | ) | Judge, presiding. |

_____

JUSTICE WELCH delivered the judgment of the court.
Presiding Justice Boie and Justice Wharton concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court's adjudicatory order finding that the minor children were neglected and dispositional order finding the respondent father unfit are affirmed where the findings were not against the manifest weight of the evidence.

¶ 2    The respondent father, Beau W., appeals the adjudicatory order of the circuit court of Madison County finding that he neglected his minor children. Beau W. also appeals the dispositional order of the court finding that he was an unfit parent. For the reasons that follow, we affirm.

1

¶ 3                                    I. BACKGROUND

¶ 4      Ch.W. was born on May 26, 2005, to Beau W. and Angela S.  Thereafter, Ca.W. was born on May 15, 2007, L.W. was born on August 7, 2008, and M.W. was born on August 26, 2011.  This appeal involves Beau W.'s parental rights to the minor children. However, facts relating to Angela S. will be discussed as necessary to provide relevant background for the issues presented in this appeal.

¶ 5      On September 25, 2020, the State filed four separate juvenile petitions asserting that M.W. (age 9), L.W. (age 12), Ca.W. (age 13), and Ch.W. (age 15) were neglected.  The petitions alleged that the minors were neglected as defined by section 2-3(1)(b) of the Juvenile Court Act of 1987 (Act) (705 ILCS 405/2-3(1)(b) (West 2020)) because they were in an environment that was injurious to their welfare in that: (1) Beau W. and Angela S. had substance abuse issues that impaired their ability to adequately care for the minor children; (2) they engaged in domestic violence; (3) a belt fashioned as a tourniquet was observed on Beau W.'s bedroom floor; (4) Beau W. and Angela S. were observed to have track marks on their arms from substance abuse; (5) Angela S. self-reported using methamphetamine; (6) they had a prior history with the Illinois Department of Children and Family Services (DCFS) including, but not limited to, prior indicated findings of an environment injurious to their welfare and inadequate supervision in June 2019; (7) Angela S. had pending criminal charges for possession of methamphetamine; and (8) Beau W. had pending criminal charges for domestic battery and possession of methamphetamine.

¶ 6    After a hearing on October 1, 2020, the trial court entered a temporary custody order as to Beau W., finding that there was an immediate and urgent necessity to remove the minor children from his care and that leaving the children in the home was against their health, welfare, and safety. The court found that there was probable cause for the filing of the petition because Beau W. and Angela S. had substance abuse issues that impaired their ability to adequately care for the minor children. Additionally, the court found that the parents engaged in domestic violence, a belt fashioned as a tourniquet was observed on Beau W.'s bedroom floor, they had track marks on their arms from substance abuse, they had a history of DCFS cases, and they both had pending criminal charges. Thus, temporary custody of the minor children was placed with DCFS.

¶ 7    On October 29, 2020, DCFS prepared a family service plan, which explained the reasons the case was opened. A report was made to DCFS regarding a domestic violence incident between Beau W. and Angela S. in the presence of M.W. DCFS noted that Beau W. and Angela S. had a history of physical violence in the presence of the children. The plan relayed that Beau W. was observed with track marks on his arms, and a belt fashioned as a drug tourniquet was located in his bedroom. Angela S. admitted that the track marks on both of their arms were related to drug use. The plan indicated that Beau W. admitted to past domestic violence incidents but denied any drug use. It was also noted that Beau W. was on probation in Madison County, had multiple warrants out for his arrest, and was not employed.

¶ 8    The services recommended for Beau W. were to cooperate with Caritas Family Solutions (Caritas), obtain and maintain sobriety, complete an integrated assessment

3

interview to determine which services needed to be completed prior to reunification, complete domestic violence perpetrator services, and maintain a life free from domestic violence to keep his children safe.

¶ 9 On December 2, 2020, Caritas filed a dispositional hearing report, which indicated that M.W. had been placed in the home of her paternal aunt, where the other three children were already residing. The following information was provided as to Beau W.'s compliance with the service plan. He was marked unsatisfactory for maintaining contact with his caseworker because he did not respond to the caseworker's initial attempts to contact him until October 28, 2020. He failed to attend court the following day, had missed a scheduled initial in-person meeting, and had not rescheduled the meeting. He was also marked unsatisfactory for agreeing to participate in an integrated assessment as he had not completed the assessment and had not responded to the caseworker's messages since November 18, 2020. He was rated unsatisfactory for obtaining and maintaining sobriety since he had not engaged in substance abuse treatment or completed any random drug tests. Lastly, he was marked unsatisfactory for domestic violence counseling. He failed to engage in counseling, and he continued to reside with Angela S., with whom he admitted to engaging in domestic violence altercations in the past.

¶ 10 Beau W. was allowed one hour of supervised visitation per week. He had not yet started visitation due to his refusal to meet with his caseworker initially and his later indication that he believed he had Covid-19. Both Ch.W. and Ca.W. did not wish to attend visitations with Beau W. L.W. and M.W. stated that they would think about attending, but they were not sure. It was noted that visitation would be attempted once Beau W. met with

his caseworker. The recommended permanency goal was to return home within 12 months for L.W. and M.W., and for private guardianship as to Ch.W. and Ca.W. It was reported that all the minor children were doing well in their placement and felt safe there.

¶ 11 On December 22, 2020, Caritas filed another dispositional hearing report, which indicated that Beau W. was again marked unsatisfactory for all his services. After his initial failures to maintain contact with his caseworker, he met with the caseworker on December 10, 2020, and had maintained contact since that time. Although he was marked unsatisfactory for completing an integrated assessment, it was noted that he had participated in the integrated assessment interview. He had not engaged in substance abuse treatment or completed any drug tests. He had not participated in any domestic violence counseling, and he was still living with Angela S., with whom he had engaged in domestic violence altercations in the past. Beau W. attended visitations with Ca.W., L.W., and M.W., during which he acted appropriately.

¶ 12 On January 19, 2021, the trial court held an adjudicatory hearing, during which DCFS child protection specialist Michael King testified. He recounted that he first made contact with the family on September 23, 2020, after a report was made to the agency about a domestic disturbance. King's incident report indicated that the parents had a verbal argument, after which Beau W. tried to let the air out of Angela S.'s tires and put her clothes in a burn pile in front of M.W. Both Beau W. and Angela S. had a history with DCFS, including "several reports" involving allegations of domestic violence and substance abuse. Although Beau W. denied recent substance abuse, King, who was an experienced substance abuse counselor, observed a belt made into a tourniquet and track marks on Beau

5

W.'s arms. Angela S. also had track marks on her arms and admitted to using methamphetamine two weeks prior to the investigation.

¶ 13 At that point, King made the decision to indicate both parents and take protective custody over the minors. M.W. was the only child in the parents' care at the time the investigation was opened, as the older three children were not living with them. King testified that he had safety concerns if the children were returned to the parents' care because of the ongoing substance abuse issues. King spoke to the youngest child, M.W., and she did not indicate any awareness of her parents' drug use.

¶ 14 King stated he did not find anything in the course of the investigation to show that the parents had neglected medical visits, food, or anything else with respect to M.W., and outside of the drug use, all of M.W.'s needs were being met. King had no evidence that Angela S. had been under the influence of drugs while parenting M.W. or that her drug use interfered with her ability to parent M.W. However, King did note that the school principal indicated to him that M.W. had not been enrolled in school that year. After completing the investigation, King indicated both parents for substantial risk of physical injury/environment injurious to the health and welfare of the child by neglect.

¶ 15 After the hearing, the trial court entered an adjudicatory order on January 20, 2021, finding that the minors were neglected in that they were in an environment that was injurious to their welfare as defined by section 2-3(1)(b) of the Act (*id.*). The court specifically found the minors were neglected for the allegations set forth in the juvenile petitions, which the State had proven by a preponderance of the evidence. In its order, the court found that Angela S. and Beau W. had substance abuse issues that impaired their

6

ability to care for the minors; they engaged in domestic violence; a belt fashioned as a tourniquet was observed on Beau W.'s bedroom floor; both parents had track marks on their arms from substance abuse; they had prior history with DCFS, "including but not limited to prior indicated finding for environment injurious and inadequate supervision in June of 2019"; and Beau W. had pending criminal charges for domestic battery and possession of methamphetamine.

¶ 16    On January 25, 2021, Caritas filed another dispositional hearing report, which rated Beau W. unsatisfactory for cooperating with Caritas and satisfactory/completed for participating in the integrated assessment interview.  Beau W. was rated unsatisfactory for obtaining and maintaining sobriety because he had not completed any random drug testing or substance abuse treatment although he had been referred to providers for a substance abuse assessment.  He was also marked unsatisfactory for domestic violence counseling because he had been referred to service providers but had not engaged in this service, and he was still living with Angela S.

¶ 17    On February 4, 2021, the trial court held a dispositional hearing, during which Caritas caseworker Sarah Vadnais testified that she was assigned to the case on September 28, 2020.  Vadnais created a service plan for Beau W. on October 29, 2020, but she was not able to give him a copy of the service plan until she met with him in December 2020.  Although her initial contact with Beau W. was on October 28, 2020, they were not able to meet until December because he failed to show up to a court date and had to cancel a subsequently scheduled meeting due to Covid-19 symptoms.  There was also a delay in contact with Beau W. because he did not return Vadnais's phone calls.  The tasks on Beau

W.'s service plan required that he cooperate with the agency, participate in an integrated assessment interview, obtain and maintain sobriety, and participate in domestic violence services. Beau W. completed the integrated assessment on December 7, 2020.

¶ 18 With respect of the service of maintaining and obtaining sobriety, Beau W. was required to complete a substance abuse assessment, follow any recommendations of that assessment, and participate in random drug screens. He was referred to Chestnut and Centerstone for the substance abuse assessment. At the time of the dispositional hearing, Beau W. had not completed a substance abuse assessment or any substance abuse treatment. He was referred for five random drug tests and only attended one. After Vadnais informed him via text message of his first drug test, he responded that he did not want to go because he had a warrant out for his arrest, and he was afraid the police would be there to arrest him. He could not attend the third drug test because he had court in a different county that day. He did not provide an explanation as to why he did not attend his second and fourth drug tests. He attended the fifth drug test offered on February 4, 2021, and the result was negative for all substances.

¶ 19 As of the date of the dispositional hearing, Beau W. had not obtained a domestic violence assessment or participated in any domestic violence counseling. With respect to his cooperation and communication with Caritas, Vadnais testified that it was not good initially as it took them about one month to contact him but since then he had been responsive and maintained contact.

¶ 20 Beau W. received one hour per week of visitation and had attended about half of his offered visits with M.W. Ch.W. and Ca.W. did not want to participate in visitation, and

L.W. participated sporadically. According to Vadnais, Beau W. interacted appropriately during visitation; he played with and talked to M.W. Vadnais testified that Ch.W. had been referred to services for life skill classes because of his age, and L.W. had been referred to counseling services based on his wishes and the recommendation of his caregiver. Ch.W. and Ca.W. did not want to return home to their parents, they did not want to participate in visitation, and they wanted to continue living with their aunt. L.W. went "back and forth" on visiting his parents and returning home to them. M.W. was "willing to go to visits and return home, but she [was] content in her placement also."

¶ 21 Vadnais testified that she had safety concerns if the children were returned to their parents' care at that time because she did not feel that the conditions that brought the minor children into care had been addressed, and there were ongoing domestic violence and substance abuse concerns. Vadnais stated that, in her opinion, the minors should be made wards of the court and that custody and guardianship be placed with DCFS. Additionally, Vadnais testified that she did not think Beau W. was fit, able, and willing to care for, protect, train, educate, supervise, or discipline the minors. She believed that he would endanger the health, safety, or well-being of the minors because he had not successfully completed the service plan tasks or corrected the conditions that brought the children into care, *i.e.*, showing sobriety over a regular basis and engaging in domestic violence services.

¶ 22 On cross-examination, Vadnais testified that she was not able to deliver Beau W.'s service plan within 45 days of the temporary custody order. She gave Beau W. his service plan at the end of a visit; she did not review it with him or ask him to sign it because he was "very upset" after their initial visit. She told him to review the service plan and contact

9

her if he had any questions, in that case, they would go over it together. Beau W. was referred for a drug screen prior to receiving his service plan, but otherwise had no opportunity to begin services prior to receiving the service plan. Beau W. experienced a delay in meeting with Vadnais when he suffered from Covid-19 symptoms and was instructed to quarantine for 14 days. His quarantine ended the week of Thanksgiving, which added to the delay. While quarantined, Beau W. could not visit any service providers. Vadnais did not ask Beau W. if he completed any of his services, and she would not know if he completed them without signing a consent for her to obtain that information. The guardian *ad litem* (GAL) testified that it was in the best interests of the minor children to be made wards of the court and that custody and guardianship be placed with DCFS. The trial court found that the agency made reasonable efforts, and that the parents were unfit as there was no evidence that they initiated anything more than the bare minimum of the service plans. After the hearing, the court entered a written dispositional order, finding both parents were unfit to care for, protect, train, educate, supervise, or discipline the minors and placement with the parents was contrary to the children's health, safety, and best interests. The court granted the petition, adjudicated the minors neglected, and made the minors wards of the court. The court placed custody and guardianship with DCFS and granted supervised visitation to the parents. Beau W. filed his notice of appeal on March 8, 2021.

¶ 23                                    II. ANALYSIS

¶ 24    Beau W. initially argues that the trial court erred in finding the minor children neglected, as the State failed to prove that they were in an environment that was injurious

10

to their welfare by a preponderance of the evidence. He also asserts that the court erred in finding that he was unfit because the State failed to prove unfitness by a preponderance of the evidence.

¶ 25                                    A. Neglect

¶ 26    Beau W. initially contends that the State provided insufficient proof that the minor children were neglected. We disagree.

¶ 27    The Act (705 ILCS 405/1-1 *et seq.* (West 2020)) sets forth a step-by-step process for deciding whether a child should be removed from his or her parents and made a ward of the court. *In re Arthur H.*, 212 Ill. 2d 441, 462 (2004). After a petition for wardship has been filed, and the minor has been placed in temporary custody, the trial court must make a finding that the child is abused, neglected, or dependent before it conducts an adjudication of wardship. 705 ILCS 405/2-21 (West 2020); *Arthur H.*, 212 Ill. 2d at 462. In cases concerning claims of abuse and neglect, the State bears the burden of proving the allegations by a preponderance of the evidence. *In re Davon H.*, 2015 IL App (1st) 150926, ¶ 47. The court has broad discretion when determining the existence of abuse or neglect as it has the best opportunity to observe the demeanor and conduct of the parties and witnesses. *Id.* Thus, the trial court is in the best position to determine the credibility and weight to be given to the witnesses' testimony. *Id.* On review, we will not disturb the court's findings of abuse or neglect unless they are against the manifest weight of the evidence. *In re Tamesha T.*, 2014 IL App (1st) 132986, ¶ 31. A finding is against the manifest weight of the evidence only where the opposite conclusion is clearly evident. *Id.*

11

¶ 28    Section 2-3(1)(b) of the Act defines a neglected minor to include "any minor under 18 years of age *** whose environment is injurious to his or her welfare." 705 ILCS 405/2-3(1)(b) (West 2020). "Neglect" has been defined as the failure to exercise the care that circumstances justly demand, including both willful and unintentional disregard of parental duty. *In re Kamesha J.*, 364 Ill. App. 3d 785, 792-93 (2006). The term "injurious environment" has been characterized as an amorphous concept that cannot be defined with particularity but has been interpreted to include the breach of a parent's duty to ensure a safe and nurturing shelter for his children. *Arthur H.*, 212 Ill. 2d at 463. Cases involving abuse, neglect, and wardship are *sui generis* and must be decided based on the unique circumstances. *Id.*

¶ 29    Here, the trial court determined the minor children were neglected by Beau W. due to being in an environment injurious to their welfare pursuant to section 2-3(1)(b) of the Act (705 ILCS 405/2-3(1)(b) (West 2020)). In support of its decision, the court expressly stated that it was giving "minimal weight" to Beau W.'s pending felony cases, as that was not a significant factor in its decision as to whether the allegations in the petition had been proven. Therefore, Beau W.'s contention that the court improperly relied on this as the basis for its finding of neglect is without merit. Instead, the court relied on the evidence of domestic violence occurring between the parents, including the incident that resulted in this case being opened, along with the evidence of Beau W.'s substance abuse. The court gave "credence to Mr. King's observations as an experienced substance abuse counselor on the nature of the marks on the parents' arms, and that is substantiated by the mother's own admission that there was use of Methamphetamine." As such, the court found the

evidence was sufficient to prove the allegations of an environment injurious to the children's welfare by a preponderance of the evidence.

¶ 30    After careful consideration, we cannot conclude that the trial court's determination that the minor children were neglected was against the manifest weight of the evidence. As indicated above, the investigation into the present case arose from a report of a domestic disturbance that occurred in the presence of M.W.  Both Beau W. and Angela S. had a history with DCFS, including several reports of domestic violence and substance abuse allegations.  King, who was an experienced substance abuse counselor, observed a belt made into a tourniquet in Beau W.'s bedroom as well as track marks on his arms.  King testified that he would have safety concerns for the children if they were returned to the parents' care due to the ongoing substance abuse issues.

¶ 31    Beau W. asserts that this case is similar to *In re Ivan H.*, where the minors were taken into temporary custody based on a hotline report that one of them had been sexually abused by her mother's live-in paramour. *In re Ivan H.*, 382 Ill. App. 3d 1093, 1095 (2008). A juvenile petition was filed based on the allegation; and although there was no corroborating evidence presented at the shelter-care hearing, the trial court found there was probable cause that the minors were neglected and abused.  *Id*. at 1095-97.  The court ultimately entered an adjudicatory order finding the minors neglected because the mother failed to comply with the safety plan directive that she was to keep the minors away from the paramour.  *Id*. at 1098.  The mother challenged the adjudication of neglect based on the fact that the court's probable-cause determination on which the adjudication was based was not supported by the evidence.  *Id*.  The appellate court found that the out-of-court report

13

of sexual abuse giving rise to the petition was uncorroborated and not subject to cross-examination, and thus, it was insufficient to support the probable-cause finding of neglect. *Id*. at 1100. In light of the insufficiency of the evidence at the shelter-care hearing, the appellate court found that noncompliance with a safety plan founded upon the faulty probable-cause determination could not be the basis for an adjudication of neglect. *Id*. at 1100-02.

¶ 32    In contrast, here, there was sufficient evidence presented at the temporary custody hearing to establish probable cause. The allegations presented in the juvenile petition were based on personal observations recorded by DCFS investigator King. He also personally testified about his investigation into this case at the temporary custody and adjudicatory hearings. Therefore, the probable-cause determination was not based on uncorroborated hearsay or a "flimsy allegation of abuse," as was the case in *Ivan H*. See *id*. at 1101. As such, Beau W.'s reliance on *Ivan H.* is without merit, the service plan was properly completed after the probable-cause finding, and his failure to comply with the service plan was sufficient to give rise to the adjudication of neglect.

¶ 33    In light of the foregoing, we conclude Beau W. breached his parental duty to ensure a safe and nurturing shelter for his minor children, which created an environment injurious to their welfare. The record rebuts Beau W.'s claim that the State failed to prove by a preponderance of the evidence that the minor children were neglected. The evidence demonstrated that there were ongoing substance abuse and domestic violence issues in the home that had not been resolved. For these reasons, the trial court's finding that the minor

children were neglected as a result of their environment being injurious to their welfare was not against the manifest weight of the evidence.

¶ 34                                    B. Fitness

¶ 35    According to section 2-22(1) of the Act, at a dispositional hearing, the trial court "shall determine whether it is in the best interests of the minor and the public that he be made a ward of the court," and then, if the minor is made a ward of the court, the court "shall determine the proper disposition best serving the health, safety and interests of the minor and the public." 705 ILCS 405/2-22(1) (West 2020). If the court determines that a parent, guardian, or legal custodian is "unfit or *** unable, for some reason other than financial circumstances alone, to care for, protect, train or discipline the minor or [is] unwilling to do so," and the best interest of the minor will be jeopardized if the minor remains in the custody of his or her parents, the court may commit the minor to DCFS for care and services. *Id.* § 2-27(1)(d). On review, the court's dispositional decision will be reversed only if its findings of fact are against the manifest weight of the evidence or the court abused its discretion by selecting an inappropriate disposition. *In re J.C.*, 396 Ill. App. 3d 1050, 1060 (2009).

¶ 36    In the case before us, the trial court found Beau W. to be "unfit to care for, protect, train, educate, supervise or discipline the minor(s) and placement with him [was] contrary to the health, safety and best interest of the minor(s)." The court found Beau W. to be unfit because he had not yet successfully completed his service plan tasks. On appeal, he contends that the court's decision was against the manifest weight of the evidence. We disagree.

15

¶ 37    Vadnais testified at the dispositional hearing that Beau W.'s service plan tasks were to cooperate with the agency, participate in an integrated assessment interview, obtain and maintain sobriety, and participate in domestic violence services. Beau W. completed his integrated assessment interview. He initially was not good at cooperating and communicating with Caritas as it took them about one month to contact him, but since then he had been responsive and maintained contact.

¶ 38    However, we find that Beau W. failed to engage in the service plan tasks aimed at resolving the issues that caused this case to be opened. Specifically, with respect to obtaining and maintaining sobriety, Beau W. never sought treatment or completed a substance abuse assessment. Although he had been referred for five random drug tests, he only completed one. Beau W. failed to attend his first drug test because he had a warrant out for his arrest, and he was afraid the police would be there to arrest him. He did not attend the third drug test because he had court in a different county that day. He did not provide an explanation as to why he did not attend his second and fourth drug tests.

¶ 39    Further, Vadnais testified that as of the date of the dispositional hearing, Beau W. had not obtained a domestic violence assessment or participated in any domestic violence counseling. As previously stated, the reason this case was opened was a reported domestic violence incident. Vadnais testified that she had safety concerns if the children were returned to their parents' care because she did not feel that the conditions that brought the minor children into care had been addressed, and there were ongoing domestic violence and substance abuse concerns. Vadnais stated that, in her opinion, the minors should be made wards of the court and that custody and guardianship be placed with DCFS.

Additionally, Vadnais testified that she did not think Beau W. was fit, able, and willing to care for, protect, train, educate, supervise, or discipline the minors. She believed that he would endanger the health, safety, or well-being of the minors because he had not successfully completed the service plan tasks or corrected the conditions that brought them into care, *i.e.*, showing sobriety over a regular basis and engaging in domestic violence services. The GAL likewise testified that it was in the best interests of the minor children to be made wards of the court and that custody and guardianship be placed with DCFS. It was for the trial court to weigh this evidence, and we will not substitute its judgment with our own. See *In re A.W.*, 231 Ill. 2d 92, 102 (2008).

¶ 40    Based on the foregoing, the trial court determined that Beau W. was unfit, as there was no evidence that he had initiated anything more than the bare minimum of his service plan. Having carefully considered the record, we cannot say that the court's finding was against the manifest weight of the evidence.

¶ 41                                III. CONCLUSION

¶ 42    For the foregoing reasons, we affirm the judgment of the circuit court of Madison County.

¶ 43    Affirmed.